The People *v.* Fishkill and Beekman Plank Road Co.

———•••———

THE PEOPLE OF THE STATE OF NEW YORK *vs.* THE FISHKILL AND BEEKMAN PLANK ROAD COMPANY.

Where an agreement was made by a plank road company with the supervisor and commissioner of highways of the town of F., by which those officers granted to the company the use of a certain highway, and the company, as a compensation for the privilege, agreed to keep such road in repair, without expense to the town ; and the legislature subsequently passed a statute by which the company was authorized to abandon, and was released from the duty of repairing, any part or all of the road; *Held* that such statute was not unconstitutional and void as impairing the obligation of contracts,

The legislature can revoke or resume such an authority given to town officers, at any time, or confer it upon other officers. So it may, either by its direct action, or by authority conferred upon and exercised by any designated agents, modify or rescind the contract, with the assent of the other party.

When a plank road company, on the one hand, and the legislature, on the other, consent to modify or rescind an agreement which the legislature had previously authorized certain agents to make on behalf of the people, with the company, the change is to be deemed made by the consent of both parties to the contract.

An agreement between the supervisor and commissioner of highways of a town, and a plank road company, by which the former grant to the latter the use of a highway, and the company, as a compensation for such privilege agree to keep the road in repair, without expense to the town, is a valid contract, and confers upon the plank road company the right to take and use such highway.

Where a statute, passed for the special relief of a plank road company, discharged the company from its obligation to construct a road, or to proceed with the work, beyond the point then reached, and from the liability to a forfeiture of its corporate existence by reason of a failure to complete the road; *Held* that a failure to construct the road within five years, as required by the general statute, was waived by such special statute, and could not be set up as a ground of forfeiture.

When a corporation, organized to build a turnpike or plank road, is required by its charter to cause its road to be laid out of a certain width, that is a condition which the corporation must perform, to entitle it to a continuance of its franchise.

The certificate of the inspectors, under § 34 of the general plank road act, is not conclusive upon the state, in a direct proceeding against a plank road company, to test the manner in which the road has been constructed; so as to estop the people from averring and insisting upon forfeitures previously incurred.

The legislature, by the act of April 15, 1854, releasing the Fishkill and Beekman Plank Road Company from the construction of a portion of road, did not confirm the road as then constructed, or waive any former acts or omissions otherwise fatal to the corporate existence of the company.

Where a plank road company constructs its road of a width less than the four rods required by the general plank road act, it will be held to have failed to comply with the directions of the law under which it was created, in an essential particular, and thus to have broken one of the conditions of its corporate existence.

And the fact that the plank road was laid out upon an ancient *highway*, which was, in no part of it, of the required width, furnishes no excuse for the omission.

That part of the act of April 15, 1854, which authorizes the Fishkill and Beek-

The People v. Fishkill and Beekman Plank Road Co.

man Plank Road Company to abandon portions of its road then built, is in conflict with section 16 of article 111 of the constitution of this state, and therefore invalid. And proceedings instituted under that act will afford no protection or justification to the company, for suffering those portions of its road to become impassable.

Where the capital stock of a plank road company has been reduced, by forfeitures of stock, by the company, for the non-payment of calls, if proceedings to abandon portions of the road, under the general plank road law, are signed or consented to by stockholders holding or representing two-thirds of the capital as thus reduced, this is a sufficient compliance with the requisition of the statute.

Where a plank road company suffers portions of its road to become impassable and dangerous, and thereby incurs a forfeiture of its charter, proceedings subsequently taken, and perfected, by the company, for abandoning those portions of the road, under the general plank road act, will not cure the difficulty. Nor will subsequent *repairs* have that effect.

When a misuser of its franchises has once been committed, by a corporation; or a breach of the duties enjoined upon it as a condition of its creation and continuance, sufficient to forfeit its charter, has occurred; mere subsequent good behavior in those respects will not legally atone for the cause of forfeiture. Nothing but a *waiver*, by the sovereign power, will relieve a corporation from the consequences of such acts.

Whatever acts, on the part of a plank road company, are willful, and done with an intention which is contrary to its duty, and forbidden by its charter, are not waived by the 6th section of the act of March 28, 1854, in relation to plank roads &c., which declares that no act or omission on the part of any such company, or of its stockholders or officers, shall work a forfeiture of its corporate power or franchises unless the same was " willful and malicious." But mere negligence, single acts of non-feasance, or omissions proceeding from inadvertence and without design, are forgiven by the legislalature, in that statute.

The class of acts or omissions, which the legislature intended to pardon, by that section, were mere acts of negligence and carelessness not done in assertion of any right or privilege, or in denial of any obligation.

But in constructing its road of a less width than the law commands, and in subsequently abandoning portions thereof and allowing the same to become impassable, without legal justification, a plank road company acts deliberately, and with design to do what it has no right to do—to disregard its duty and violate its charter. These acts are such as are styled in the statute " willful and malicious," and will consequently work a forfeiture of the charter.

THIS was an action in the nature of a *quo warranto*, brought by the attorney general, in the name of the people, for the purpose of forfeiting the defendants' charter. It was tried at

the circuit in Dutchess county, upon issues which were submitted to a jury. Upon their verdict, in favor of the plaintiffs, the counsel for the people moved for judgment; whereupon the following opinion was delivered.

*G. Dean,* for the plaintiffs.

*John Thompson* and *H. A. Nelson,* for the defendants.

EMOTT, J. Some of the questions discussed upon the present argument have been examined in a former action, brought against these defendants by the town of Fishkill. In that case I came to the conclusion that so much of the act passed April 15, 1854, entitled "An act to release the Fishkill and Beekman Plank Road Company from the construction of part of their road, and for other purposes," as discharges the defendants from the condition imposed by their charter, of carrying on their road from the point it had reached to their appointed terminus, was valid, while all the residue was unconstitutional and void. It was argued, in this case, as indeed it was suggested in the other, that the whole act is unconstitutional, as impairing the obligation of contracts. While the opinion expressed in the former suit, to which I have alluded, may not be regarded as an authority upon these points, since the only question necessarily determined in that action was that the town could not maintain such a suit, yet I have seen no reason to change the views then formed, either one way or the other. The contract which this act is supposed to impair, is that made by the company with the supervisor and commissioner of highways of the town of Fishkill, by which these officers granted the use of certain highways to the defendants, and they, as compensation for these privileges, agreed to keep such roads in repair without expense to the town. If the special statute by which this particular company was authorized to abandon, and was released from the duty of repairing, any or all of this road, be

The People *v.* Fishkill and Beekman Plank Road Co.

unconstitutional for this reason, the general act applicable to all such companies is equally so. It can make no difference that it is general and not special; and I do not see how the fact that corporations which avail themselves of its provisions are required to leave the roads which they abandon in a certain state of repair, affects the question. That may make the general law more just and wise, but it none the less enables those companies to relieve themselves of obligations which would otherwise be continuing. In truth, wherever public highways have been taken by agreement with the public officers, any abandonment which any law authorizes puts an end to the obligations which the company assumed by such agreements. In this view of the argreement it may be proper for me, without discussing the question at length, briefly to indicate the conclusions to which I have come, so far as I have considered this part of the case. I do not consider the objection well founded. In making the agreement of July, 1851, with the defendants, giving them a right to occupy and use the highway, these officers were not acting in their own right or dealing with their own property, either as individuals or as public officers. Nor were these highways, or the right of way and passage to which the contract related, the property of the town of Fishkill. The supervisor and commissioners were simply agents designated to represent, and authorized to bind, the people in respect to the public right of way and passage over this road. Whether they are to be considered as representing the people of the whole state, or of any portion of it, is immaterial. They derived their authority not from their office nor from the town, but from the action of the legislature, who, by statute, gave them power to make the contract. In conferring this authority, the legislature acted for the people, and could have exercised the power and made the agreement, or granted the right of way, themselves. The legislature could also revoke or resume this authority at any time, or confer it upon other officers. So also, it is very clear to me that they may, either by their direct

action, or by authority conferred upon and exercised by any designated agents, modify or rescind these contracts, with the assent of the other party. This power must reside somewhere. It would be an absurd conclusion that a contract made on behalf of the people by a particular officer designated for that purpose, was irrevocable and past all human control or alteration. The people cannot act, or become bound in any agreement, except by the intervention of their representatives, the legislature. No direct action of the whole people, as such, is possible or permissible in our form of government; and practically for all purposes of making, and equally for all purposes of unmaking, contracts, the legislature are the people. When, therefore, the plank road company on the one hand, and the legislature on the other, consent to modify or rescind an agreement which the same legislature had authorized certain agents originally to make on behalf of the people, with the company, the change is made by the consent of both parties to the contract.

It is also contended that this contract was originally void, as exceeding the power of the supervisor and commissioners, or if not void *in toto*, according to the view taken by the defendants' counsel, that the condition upon which the license to take the highway is given is void, and the grant absolute. It is not necessary now to determine whether either, and if so, which of these views is correct. With my present impressions, I am not inclined to accede to either. Upon an examination of this question on a former occasion, to which I have already adverted, I came to the conclusion that this agreement was valid, and that compensation for the privilege of using a highway could be made in this way. The question was not very fully discussed on that argument, and the case of *Palmer* v. *Fort Plain and Cooperstown Plank Road Co.*, (1 *Kern.* 376,) was not adverted to. That case is now cited as establishing the invalidity of any agreement for the use of a highway, by a plank road, which fixes the compensation to be paid in any other way than in money. But the case does not decide this,

The People *v.* Fishkill and Beekman Plank Road Co.

The agreement which was there condemned as exceeding the powers of these officers, was one by which they had endeavored to bind the company in regard to the location of their gates; and the question presented was whether the company were bound by such an agreement. The objection came from the company, and not the public, and the court held that the power to fix, or to alter, the location of gates, was not conferred on these public officers, and could not be exercised or restricted by such an agreement. I do not understand that it follows from what was there decided, that under the statute in question the supervisor and commissioners could not agree with a plank road company to give the use of a highway without compensation, where none really was due or should be paid for it, or at a nominal compensation, or a compensation consisting of an agreement to keep the road in repair for a definite period, or forever. This would be an agreement relating wholly to the use of the road and the amount of compensation to be paid for it, either directly to the town through its officers, or indirectly by expending it upon the road. The other was an agreement, where a permission to use a highway was connected with a stipulation, relating to a totally different matter, the location of toll gates, and which could not be considered as fixing or ascertaining a compensation to be paid in any form, direct or indirect. The two cases are not, it seems to me, parallel.

I have therefore come to the conclusion that the defendants acquired the right to take and use the highway upon which their road was built, in a legal and valid manner.

So far as regards that portion of their contemplated road which they never built or commenced, the statute passed for their special relief, April 15, 1854, (*Laws of* 1854, *ch.* 271,) discharges them from their obligation to construct it, or to proceed with the work beyond the point then reached, and from the liability to a forfeiture of their corporate existence which would otherwise be consequent upon the neglect or failure to complete the road. I think, therefore, that the fail-

ure to construct the road within five years, as required by the general statute, is waived by this law, and cannot be set up as ground of forfeiture.

The vital questions in this case lie beyond these preliminary inquiries; and the case, like every other which depends upon the confused legislation which fills our statute books in relation to plank roads, presents several questions of serious difficulty. The first position taken by the plaintiffs is that the corporate existence of the defendants is forfeited by their failure to observe the conditions imposed upon them by law in the construction of their road. The performance of the duties enjoined by the fundamental law, by or under which corporations are created, is in all cases a condition of the grant of corporate privileges and franchises. (1 *Ld. Ray.* 498. 12 *Mod.* 291. *Case of the City of London,* 8 *State Trials,* 1271.) A failure to perform any of these duties is therefore a breach of the condition upon which the corporation holds its franchise.

These cases, and others cited in *The People* v. *Kingston and Middletown Turnpike R. Co.,* (23 *Wend.* 193,) and in *Ang. & Ames on Corp.* 745, 3d ed., show that this was the rule at common law. The statute (2 *R. S.* 483, § 39,) provides that an information may be filed to procure the forfeiture of the charter and privileges of any corporate body, whenever it shall offend against any of the provisions of the act or acts creating such corporation, as well as for a violation of any provisions of law in such a way as to constitute a positive misuser. In the case of *The People* v. *The Kingston and Middletown Turnpike Road Co.,* and in the two succeeding cases of *The People* v. *Bristol and Rensselaerville Turnpike R. Co.,* and the same v. *Hillsdale and Chatham Turnpike Road Co.,* (23 *Wend.* 193, 222, 254,) it was held that this provision was in affirmance of the rule of the common law which held corporations to the substantial performance of all the express conditions required by the acts from which they derived their privileges, just as an individual is required to fulfill

The People *v.* Fishkill and Beekman Plank Road Co.

substantially, a condition upon which he holds an estate. While the performance need not be exact in every particular, in either case, yet with a corporation, as with an individual, it must come up to the substance of the requirements of the grant. It must be substantial, and yet reasonable and according to both the intention of the grantor and the ability of the grantee. In the cases to which I have referred, it was held that the construction of their road by a turnpike company in the manner and within the time directed by their charter, or the general law to which they were subjected, was a condition on which they obtain their franchise. After the condition has been complied with, all that is demanded of such corporations is to maintain their roads in a good and substantial state of repair, so as to accomplish the public designs of their creation. The breaches which were alleged against the *Kingston and Middletown Turnp. R. Co.* (23 *Wend.* 193,) in the first 24 replications to the plea, in which they set up their charter to justify their taking toll, etc., were failures to comply with the law in the construction of the road, in regard to its width, material and manner of construction; and although Mr. Justice Cowen dissented from his brethren upon another point, all the judges were agreed that a failure to observe these requirements of the law in any substantial particular, if not waived or excused by the sovereign power, would be a forfeiture of the charter. These cases are authority directly in point to show that when a corporation, organized to build a turnpike or plank road, is required by its charter to cause its road to be laid out of a certain width, that is a condition which the corporation must perform, to entitle it to a continuance of its franchise. Indeed as long as the mandate of a statute upon this, or any other point, in regard to the organization of a company or the construction of its road, is explicit and peremptory, the courts cannot slight or disregard it. We have no right to consider the greater or less importance of the requirement, or to distinguish between one condition and another. The only questions for a court in such cases, are, is the act

required, and has it been performed? Undoubtedly the re-
quirement must be explicit, and it is enough that it be sub-
stantially performed. But this is the extent to which we can
go. We have no dispensing power.

The judgment of the court, in the same cases, also disposes
of the argument that the certificate of the inspectors estops
the state from averring any previous forfeiture; or that the
act of the legislature, passed in 1854, (*Laws of* 1854, *ch.* 271,
*p.* 593,) authorizing the defendants to terminate their road
at the point then reached, waived any former acts or omissions
otherwise fatal to their corporate existence. As to the first
proposition, the certificate of the inspectors, under § 34 of the
general plank road act, is at least of no higher character, and
should be no more conclusive upon the people than the re-
port of commissioners and subsequent express license of the
governor to take toll, which were authorized and required by
the former turnpike law. (*See Laws of* 1807, *ch.* 38; 1 *R. L.*
228, 232.) In both statutes the point to be ascertained and
certified by the officers or agents appointed for that purpose,
is whether the road is completed, according to the true intent
and meaning of the law. But in neither case is this certifi-
cate—not even when strengthened by the governor's license
under the former law—conclusive upon the state in a direct
proceeding to test the manner in which the road has been con-
structed. In reference to the effect of the law of 1854, it is
only necessary to observe, in the language of Chief Justice
Nelson, when a similar point was presented in the case of the
*Kingston and Middletown Turnp. R. Co.* (23 *Wend.* 212,)
that the legislature have not, by any portion of the act of
1854, which is valid and constitutional, confirmed the road
as constructed, in express terms; and no such implied intent
can be perceived in any of its provisions. If the whole act
were valid, I am not satisfied that it would aid the defendants
on this point. An express confirmation is not to be found in
any part of the act, and the last section, which is intended to
legalize all the proceedings of the company which were sup-

posed to be defective, although enumerating a variety of acts and omissions, fails to cover this vital point.

The question then is, whether the defendants were required, by the provisions of the law under which they were organized, to lay out and construct a road of the width of four rods, as is claimed by the counsel for the people. Section 31 of the general plank road act enacts that "every plank road made by virtue of this act shall be laid at least four rods wide." The road of the defendants was made, for the entire length of the part now remaining, and exclusive of the portion abandoned at the western end, upon an ancient highway which was in no part of it of the required width. The right to take and use this portion of the highway having been procured by agreement with the commissioners and supervisors of the town, pursuant to section 26 of the general plank road law, the road was constructed upon the highway as it was; the fences were not removed nor were any steps taken to widen it. It is contended by the defendants that in thus authorizing these corporations to acquire and take the right to the use of public highways, the legislature intended to allow them to take such highways just as they are, and of whatever width they may be, and to make the case of roads thus built on ancient highways an exception to the mandate of the law that such roads must be four rods wide. But this is not the language of the act. The provision requiring plank roads to be laid out of this width is broad, and comprehends every road made under the act; whether it be laid out by commissioners, or by agreement between the corporation and parties interested in the lands. It applies equally to roads which are constructed upon new routes through the lands of individual owners and to those which are built wholly or in part upon former highways. There is no exception of the latter from the general requirement; nor is there any clause in that part of the law allowing highways to be thus obtained and occupied, which recognizes a road constructed on such a highway as a compliance with the statute, whatever may be its

The People *v.* Fishkill and Beekman Plank Road Co.

width, and waives in its favor what is required in every other case. The statute (§ 26) does not expressly confer the right to take a highway; it rather regulates the manner of its exercise. Much less does it make any highway thus taken a substitute for the road which these companies are required to lay out, either in width or in any other respect. The whole design and effect of these provisions of the act is to authorize certain public officers to agree what compensation shall be paid for the use of a highway, and to direct the manner in which the damages are to be ascertained, where the corporation and the public authorities do not agree upon them. There certainly is not to be found in the statute any express permission to the defendants, because they found it necessary or expedient to take a public highway for their exclusive use, therefore to lay out their road of less width than is prescribed for all roads to be made under the act. It is said it would have been impracticable to widen this highway. That might have been a good reason why the defendants should not have taken it for their road, but it will not justify us in relaxing the clear requirements of the law, in their favor. The fact is, however, that the defendants might probably have been relieved from the objection, if they had taken the proper course. By chap. 250 of the laws of 1849, p. 374, § 7, the inspectors of plank roads, in cases where the road was not laid out by commissioners, were authorized to determine the distance that the outer limits of any road should be apart; in other words, to fix the width of the road. The same power had been conferred by a previous statute upon the commissioners appointed to lay out the road, in cases where that course is pursued. These statutes confirm the construction of the original act, which makes the requisition of a width of four rods universal, and seem intended to obviate such practical difficulties as these defendants complain of. But the defendants cannot claim the benefit of either of these later provisions. Their road was not laid out by commissioners, and no determination of the inspectors has ever settled its width. They have there-

fore failed to comply with the directions of the law under which they were created, in an essential particular, and thus have broken one of the conditions of their corporate existence.

The next question arises upon the finding of the jury that the defendants have suffered portions of their road to become impassable. This was not mere negligence, but a deliberate and intentional proceeding of the defendants under a claim of right. It is justified by the abandonment which they claim to have made of these portions of their road, formally relinquishing its charge and returning it to the public, as they suppose they had a right to do. The authority for this is claimed to be found, first, in the special statute of April, 1854, which I have adverted to, and second, in the general law for the relief of plank road companies. (*Laws of* 1854, *p.* 167, *ch.* 87.) Proceedings were had and papers filed under both statutes, first, in order to comply with the special act, in August, 1854, and afterwards in conformity with the requisitions of the general law, in November, 1854. As to the first attempt to abandon portions of this road, I am satisfied, for reasons which I stated in the case of *The Town of Fishkill* v. *The Fishkill and Beekman Plank Road Company*, that all that portion of the act in question which authorizes the abandonment of portions of the defendants' road then built, and of course those parts of the act under which these proceedings were had, is in conflict with section 16 of article 111 of the constitution of this state. These proceedings under this act cannot therefore be a justification or protection to the company. The other proceedings to abandon portions of the road, taken under the general law on that subject, are objected to, because they were not signed or consented to by stockholders holding or representing two-thirds of the nominal capital of the company, which was $30,000. It is proved, however, that the capital had then been reduced to $         , by forfeitures of stock by the company for the non-payment of calls. Two-thirds of this amount does appear on these papers, and that is two-thirds of the capital stock at that time, and answers the

requisition of the statute. Otherwise it would be impossible in such cases ever to comply with it, since stock thus forfeited could not be represented, and must always absolutely prevent the desired action, even if two-thirds of all the stock owned by actual stockholders could be found to consent. After these proceedings had been perfected, therefore, the defendants were released from the obligations thus renounced.

But another question arises from the fact that the defendants permitted portions of their road to become impassable, and dangerous, long before these latter proceedings, and therefore before they took any legal or sufficient action to relieve themselves from the obligation of repairing it. The subsequent action, surrendering these portions of their road, will not cure the difficulty. Subsequent repairs would not have that effect. It is not necessary that the neglect, misuser, want of repairs or the like, for which the action is brought, should exist at the time of its commencement. On the contrary it is well settled, that when a misuser of their franchises has once been committed by a corporation, or a breach of the duties enjoined upon them as conditions of their creation and continuance sufficient to forfeit the charter, mere subsequent good behavior in such respects will not legally atone for such a cause of forfeiture. Nothing but the waiver of the sovereign power will relieve a corporation from the consequences of such acts. (*See* 23 *Wend.* 254, 258.) The jury have found that the part of the defendants' road at its western extremity which is complained of became dangerous and impassable in 1855, and the eastern extremity became impassable as early as 1854. I shall say nothing about the eastern extremity, but as to the western end of the road the facts are found by the jury very strongly and justly, under the evidence. They find that the road became both impassable and dangerous, and that the defendants refused to repair or continue the care of it after they had removed the plank in the year 1855. The defendants show no valid release from their obligation to keep these as well as the other portions of the road in order, until November, 1856,

when, as I have already stated, they perfected proceedings for an abandonment under the general law. Their excuse in the mean time is the abandonment of this part of the road, which they had filed and supposed they had a right to complete under the special law which they had obtained in April, 1854. Holding that law to be unconstitutional and invalid, so far as it authorizes or gives the consent of the legislature or the people to any such abandonment of any part of the defendants' road then built, I cannot see how it can be of any avail to the defendants. It is said that their action was taken in good faith, supposing they were justified by this law. That only amounts to saying that they misconceived their rights, and undertook to assert privileges which they did not in reality possess. It is true the *animus* or intention of the defendants, in allowing portions of this plank road to become and continue thus completely out of repair, was different, under the circumstances of this case, from what it would have been if they had without color or pretext of right destroyed a portion of their road, and suffered it to become, or indeed made it, impassable. But the *animus* of the defendants, although it may perhaps be material upon another question in the case, cannot strictly or properly affect the issue as to the effect of these acts. Their acts, and the legal justification for them, are what we must consider in determining their effect. There may be cases of trifling mistakes of law or duty, excessive toll in small amounts ignorantly taken, or mistakenly claimed, or slight or casual and temporary neglect of their duty as to repairing the road, where it would be too harsh to insist upon a forfeiture for an honest error, or a slight omission. But where there is a continued refusal to discharge the duties of keeping a road in substantial repair, and that as to very considerable portions of it, and to such a degree that those portions become an absolute nuisance; where there is, in short, an actual and formal abandonment of what the law has once committed to the charge of a corporation, it can make no difference that the refusal and neglect are under a claim of right, if that claim

be ill founded. If a corporation assume such important privileges, and throw off such essential obligations, under the authority of a statute, they are bound to know whether that statute is constitutional and valid, and must suffer the consequences if it is not. If these views are just, and if the invalidity of the statute in question has been correctly decided in this and a former action in which it came in question, I think this also is cause of forfeiture.

The question which has occasioned me the most difficulty in the case still remains. That is the question whether these causes of forfeiture are waived by the provisions of section six of chapter 87 of the Laws of 1854, page 167. This is a general act for the relief of plank road companies, and authorizes among other things the relinquishment of the whole or portions of their roads. It is the act under which the defendants have finally proceeded to effectually abandon and discharge themselves from the care of parts of this road. The sixth section first provides that every company formed under the general plank road law shall be deemed to be a valid corporation, notwithstanding it may not have complied with the requirements of that act, and of the acts amendatory thereof, in the *formation* and *organization of such company*, and *preparatory to the construction* of its road. This portion of the statute obviously relates to a different class of acts or omissions from that now under consideration. Its object is to save this class of corporations from the consequences of any errors or omissions in the various formal acts required for the organization of such companies. It is confined by its terms to these, and cannot extend to subsequent breaches of conditions, neglect of duties, or misuser of powers. Then follows this clause: "and no act or omission on the part of any such company, or of its stockholders or officers, shall work a forfeiture of its corporate power or franchises, unless the same was *willful and malicious.*" The word "willful" has an intelligible application in this connection, but it is not so easy to see what is the meaning of the term "malicious." It can hardly be taken in its ordinary

The People *v.* Fishkill and Beekman Plank Road Co.

sense, as denoting acts which proceed from a depraved mind and an intention of doing injury or mischief to some one. Such actions are hardly within the scope of such a law, or within the designs or conduct of corporations, or their agents, as such. If nothing should ever forfeit a charter unless it were done out of a wicked design to do some one a mischief, there would be few causes of forfeiture left. To say this, would be tantamount to saying that neither the most marked neglect of duties, nor the most entire failure to observe conditions, nor even an unfounded and illegal usurpation of privileges, would, without the ingredient of a personal motive added, deprive any of these corporations of the franchises they were abusing. The only rational sense which can be attached to the word " malicious" as it is here used, is that it is used to denote acts which are wrongful or unauthorized, such as are an intentional violation of the trusts and disregard of the duties imposed upon the corporation and its officers. Whatever acts, therefore, are willful, and done, with an intention which is contrary to the duty of the defendants and forbidden by their charter, are not waived ; while mere negligence, single acts of non-feasance, or omissions proceeding from inadvertence and without design, are forgiven by the legislature in this statute. This is going as far as we can suppose the legislature meant to go. If they intended to go farther, they might as well have said, and would have said, that nothing which any of these corporations had done should prejudice their corporate rights or privileges.

The difficulty and confusion arises from using a word in a connection, and with reference to a subject, to which it has no legitimate application. We are driven to conjecture, or at any rate to analogy, to ascertain the meaning of such a word as " malicious," in such a connection.

Upon the whole I think the class of acts or omissions which the legislature intended to pardon are mere acts of negligence and carelessness not done in assertion of any right or privilege, or in denial of any obligation. The neglect to file a map or

survey of the road, as required by the statute, is an instance of such an act or·omission. It was done without design, and it is evidently, (if it were cause of forfeiture,) waived by this act. But in the two instances which we have been considering, the construction of the road otherwise than the law commanded, and the subsequent abandonment of parts of it to become impassable, without legal justification, the defendants acted deliberately, and with design to do what they had no right to do, to disregard their duty and violate their charter. It was not negligence in them to lay out a road less in width than the statute required: it was a willful transgression of the law. Nor was it mere negligence by means of which parts of the road became impassable. They designedly took off their plank, destroyed the track, and abandoned the road, and claimed a right to let it remain so.

If therefore these acts were wrong, and if they were sufficient to forfeit the corporate privilege enjoyed by the defendants, I am satisfied they were such acts as are styled in the statute of 1854 "willful and malicious." I think any other definition of these terms in the statute would open the door to manifold abuses, and justify much which the legislature could not have contemplated.

And holding as I have that these, unforgiven by the sovereign power, are causes of forfeiture, it only remains for me to adjudge the corporate existence of the defendants forfeited, and to order judgment for the people with costs.

[DUTCHESS SPECIAL TERM, March 2, 1857. *Emott,* Justice.]