## Case No. 11,193.

### PITTS et al. v. HALL.

[3 Blatchf. 201.] [1]

Circuit Court, N. D. New York. Oct., 1854.

PATENTS—AGREEMENT FOR INTEREST IN RENEWAL—CONSTRUCTION — JOINT PATENTEES — SALE WITHOUT AUTHORITY OF CO-OWNER.

1. Where a patentee, in 1846, made an agreement with a person, that, in case of the renewal of the patent, or of the obtaining of other or further letters patent for the invention, after the expiration of the existing patent, such person should have a certain undivided interest in the rights that should be secured by the further or renewed letters patent: Held, that the parties had in view an extension of the patent under the 18th section of the act of July 4, 1836 (5 Stat. 124).

[Cited in Hodge v. Hudson River R. Co., Case No. 6,559.]

2. A. and B. were joint patentees. A. assigned to B. his right for New York. B. then assigned to C. the undivided half of the patent for New York, and agreed with C. that, in case of the extension of the patent, C. should have and be entitled to the undivided one-fourth of the patent for New York on paying to B. the proportional one-fourth part of the expenses of obtaining the extension, that is, to be proportioned as the value of the right for New York should be to that for the rest of the United States, and C. to pay the one-fourth part of the proportion for New York. The agreement was recorded. The patent was extended, and, after the extension, C. requested B. to inform him what the expenses of obtaining the extension had been, and offered to pay him the proportion of expenses mentioned in the agreement to be paid to B. by C. B. refused to inform C. what the amount of the expenses had been. C. was ignorant of the amount, and B. knew the fact. C. then went on, after the extension, to work under the patent, and was sued for infringement by A. and B. C. pleaded specially the above matters: Held, on demurrer to the plea, that the agreement was a valid executory agreement, entitling C. to the undivided interest in the extended patent, on the performance of the condition precedent as to the payment of the specified portion of the expenses of obtaining the extension.

[Cited in De Witt v. Elmira Nobles Manuf'g Co., 66 N. Y. 463.]

3. Whether the terms of the agreement are words of grant and conveyance, and whether the agreement would be a sufficient assignment of the undivided interest in the extension, if the condition precedent had been performed, quere.

4. The offer by C. to perform the condition precedent, did not vest in C. the undivided interest in the extension, and the plea was bad.

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

5. Semble, that the plea would be bad, even if the undivided interest in the extension had vested in C.

6. The relation of copartners does not exist between joint patentees, or between one of two joint patentees and the assignee of the other. The parties are simply joint owners or tenants in common, like the joint owners of a chattel.

7. One joint owner of a patent for a machine can use and sell machines made according to the patent, only in respect to his own right. If he uses or sells them without the authority of his co-owner as respects the right of the latter, he is liable to an action by such co-owner for an infringement of the patent.

[Cited in May v. Chaffee, Case No. 9,332; Dunham v. Indianapolis & St. L. R. Co., Id. 4,151; Herring v. Gas Consumer's Ass'n, 9 Fed. 557.]

[Cited, contra, in Carter v. Bailey, 64 Me. 464.]

8. In such action, the plaintiff may recover his actual and proper damages, proportioned to the value and extent of his undivided interest, without regard to the amount which his co-proprietor has received by means of the infringement.

This was an action on the case for the infringement of letters patent [No. 542] granted to the plaintiffs [John A. and Hiram A. Pitts] in the year 1837, and extended for seven years, in 1851, under the 18th section of the act of July 4, 1836 (5 Stat. 124). The declaration alleged that the defendant [Joseph Hall] had, unlawfully and without the consent of the plaintiffs, made, used, and vended to others to be used, large numbers of the machines patented to the plaintiffs, in violation of the exclusive right granted to the plaintiffs by the letters patent and the extension thereof. The defendant pleaded the general issue, and also a special plea, in which he set up that the plaintiff Hiram A. Pitts, after the granting of the letters patent, and during their original term, assigned to the plaintiff John A. Pitts, all his title to the patent and the rights thereby secured, for the states of New York and Michigan; that thereafter, and in the year 1846, John A. Pitts did, by an agreement in writing, transfer to the defendant the one equal undivided half part of all the rights secured by the patent for the states of Michigan and New York; and that it was, by the agreement, agreed by John A. Pitts with the defendant, that in case of the renewal of the patent, or of the obtaining of other or further letters patent for the invention, after the expiration of the existing patent, the defendant should have and be entitled to the equal undivided fourth part of all the rights and benefits that should be secured, by such further or renewed letters patent, for the states of New York and Michigan, on paying to John A. Pitts the proportional one-fourth part of the expenses of obtaining the further or renewed letters patent—that is to say, to be proportioned as the value of the right for the states of New York and Michigan should be to that for the other states and territories of the United States; and the defendant to pay the one-fourth part of the proportion for the states of New York and Michigan. The plea also set forth, that the agreement had been duly recorded in the patent office at Washington; that immediately after the extension of the patent, the defendant called upon and saw John A. Pitts, and requested him to inform him, the defendant, what the expenses of obtaining the extension of the patent had been, and stated to him, in substance, that he was ready and willing, and then and there offered, to pay him the proportion of expenses mentioned in the agreement to be paid to John A. Pitts by the defendant; that John A. Pitts then and there declined and refused to inform him what the amount of such expenses had been, although the defendant then was and ever since had been ready and willing to pay John A. Pitts his just proportion of said expenses; that the defendant was wholly ignorant, at the time, of the request and offer to pay, and still was ignorant, of the amount of expenses of obtaining the extension, which ignorance of the defendant was, at said time, well known to John A. Pitts; and that John A. Pitts so declined and refused to make known the amount of such expenses to the defendant, with a view to put it out of the power of the defendant to pay him the just and proper proportion of the expenses, according to the terms of the agreement. To this plea there was a general demurrer and a joinder.

William F. Cogswell, for plaintiffs.
Alvah Worden, for defendant.

HALL, District Judge. It was urged, upon the argument of the demurrer, that the agreement set forth in the plea did not, upon any fair construction of its terms, give, or provide for giving, to the defendant any interest in the extended patent; and that the words used, though proper and apt, were none of them proper or apt words to confer any interest in the extended patent. But I cannot doubt that the parties intended, by the language used, to refer to and provide for an extension of the patent under the general patent law. The term "renewal" was, in my judgment, a proper and apt word for that purpose. The 18th section of the act of July 4, 1836 (5 Stat. 124), under the authority of which the extension was granted, declares that, in the cases provided for in that section, "it shall be the duty of the commissioner to renew and extend the patent, by making a certificate thereon of such extension, for the term of seven years from and after the expiration of the first term;" and, also, that "the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented, to the extent of their respective interests therein." The parties have, therefore, followed the language of the statute, and the renewal or extension of the patent under the section just referred to, was clearly within the contemplation and intention of the parties in making the agreement.

The agreement set forth in the plea must, therefore, be considered as a valid executory agreement, entitling the defendant to the undivided interest in the extended patent, upon the performance of the condition precedent in that agreement mentioned. It may, perhaps, be doubtful, whether the terms of the agreement are not words of grant and conveyance, and whether the agreement itself, even under the provisions of the patent law, would not have been a sufficient assignment of the interest to which it relates, if the condition precedent—the payment of the specified proportion of the expenses of obtaining the extension—had been performed. Without discussing this question, I shall pass to another, which would necessarily arise in case it should be held to be a present grant upon a condition precedent.

If the agreement is a present grant upon condition, the condition is confessedly a condition precedent. It is a condition which the defendant may or may not perform, at his election; and, by its express terms, no interest is to vest until the condition is performed. It is, however, contended, that the plea shows a readiness and an offer to perform; that the performance of the condition by the defendant was prevented by the wrongful act of the plaintiff John A. Pitts; and that the grant has therefore become absolute, and the undivided interest in the patent completely vested in the defendant.

If it be admitted that the offer to perform, and the conduct charged upon the plaintiff John A. Pitts, as stated in the plea, are sufficient to enable the defendant to bring his action for a breach of the agreement, it does not necessarily follow that the grant has become absolute, so as to vest in the defendant the right granted upon the condition stated. The defendant may have done all that he can be legally required to do, to entitle him to bring his action and recover damages for the non-performance of the agreement on the part of the plaintiff John A. Pitts; or to entitle him to file his bill, and obtain a decree for a conveyance of the specified interest, on paying the proportion of the expenses required to be paid by the terms of the contract. In the first case, the fact of the non-payment of the expenses would have its due weight, upon the question of the amount of damages to be awarded; and, in the second, the decree, like the grant or agreement, would be conditional, and the now defendant would only have the benefit of such decree upon the payment into court, or to the opposite party, of the amount of such expenses, to be ascertained under the direction of the court. But, if the matters set up in the plea are held to be a full defence to the plaintiffs' action, the plaintiffs may be turned out of court, and be charged with costs, and the plaintiff John A. Pitts may be wholly unable to obtain the payment of any portion of the expenses mentioned in the agreement. It is no answer to say that this is not probable, and that the damages which the plaintiffs seek to recover in this case are trifling and insignificant, compared with the value of the interest to which the defendant is entitled under the agreement. It might be otherwise; and, if the principle contended for is to be sustained, it would equally apply in a case where the infringement had continued during the whole term of the extension, and the claim of the plaintiffs much exceeded the amount to be paid as a condition precedent to the vesting of the right. The offer to perform the condition precedent has not, in my opinion, given effect to the grant, if grant it be, so as to vest the undivided interest; and, on this ground, the plaintiffs are entitled to judgment on the demurrer.

But I am inclined to think that the plea is bad upon another ground, and that the plaintiffs would be entitled to judgment even if the undivided one-fourth interest in the extended patent had actually vested in the defendant. The rights of joint patentees, or of assignees of undivided interests in a patent, as against each other, in respect to the making, using, and vending the patented invention, have not, so far as I have been able to discover, been discussed by any elementary writer or in any reported case. The counsel, on the argument of the demurrer in this case, declared the question to be an embarrassing one, which had never been decided; and, without intending now to express an opinion by which I shall feel bound, if, upon a further discussion of the question, a different conclusion shall be reached, I propose to put upon paper for further use the result of my reflections upon it, in the hope that the attention of parties interested may be attracted to the subject, and that the question may be brought before the supreme court of the United States for adjudication.

In the case of joint patentees, where no agreement of copartnership exists, the relation of copartners certainly does not result from their connection as joint patentees; and, when one joint owner of a patent transfers his undivided interest to a stranger, the assignee does not become the partner of his co-proprietor. In both cases, the parties interested in the patent are simply joint owners, or tenants in common, of the rights and property secured by the patent; and their rights, powers, and duties, as respects each other, must be substantially those of the joint owners of a chattel.

Part owners of goods and chattels are either joint owners or tenants in common, each having a distinct, or at least an independent, although an undivided interest in the property. Neither can transfer or dispose of the whole property; nor can one act for the other in relation thereto, but merely for his own share, and to the extent of his own several right and interest; and, at common law, the one had no action of account against the other, for his share of the profits derived from the common property. Story, Partn. § 89.

A personal chattel vested in several different proprietors cannot possibly be enjoyed advantageously by all, without a common consent and agreement among them. To regulate their enjoyment in case of disagreement, is one of the hardest tasks of legislation, and it is not without wisdom that the law of England and of this country in general declines to interfere in their disputes, leaving it to themselves either to enjoy their common property by agreement, or to suffer it to remain unenjoyed, or to perish by their dissension, as the best method of forcing them to a common consent for their common benefit. Abb. Shipp. 98.

It is well settled, that a destruction or sale of the joint property by one of the part owners, authorizes his co-proprietor to maintain trover for the conversion. 2 Kent, Comm. (8th Ed.) 351, note. But, on such a sale, only the right of the party who makes the sale passes to the purchaser; and the purchaser becomes a tenant in common with the owner of the remaining interest, unless and until the latter confirms the sale, or recovers the value of his share from the wrong-doer.

The principles of these doctrines are, it strikes me, applicable to the case of the joint ownership of patent rights. The grant of the exclusive right to make, use, and vend to others to be used, is to the patentees jointly and not to either severally. The right, the property secured by the patent, may be granted to others by license or assignment, or by the sale of machines by the patentees jointly; and a license or assignment or sale of a machine by them, is a transfer, pro tanto, of the property secured by the patent. One joint owner can legally grant, assign, license, or sell only in respect to his own share or right. He cannot sell and give a good title to his co-owner's right, for the same reason that one joint owner of a chattel cannot transfer the share of his co-proprietor. And, if he appropriates any portion of the exclusive right or common property to his separate use or benefit, by either the use or the sale of the patented machine, he does what is in principle the same as the conversion, by destruction or sale, of the joint property by a tenant in common, which authorizes his co-tenant to maintain trover.

I can see no objection in principle to the doctrine, that the joint owner of a patent can sustain his action for an infringement against his co-owner, in which he can recover his actual damages, according to his interest in the patent. His rights are invaded by the act of his co-proprietor, and he is entitled to his legal remedy. This invasion is tortious, and no action founded upon a contract can be sustained, unless this tort is waived, and the tortious act confirmed; for, no contract exists, upon which such an action can be founded, without such waiver and confirmation. The injury is a violation of the exclusive right secured by the patent; and, for this injury, the action for an infringement is the appropriate remedy, and one which enables the court, without the violation of legal principles, and in the most direct and convenient mode, to do justice between the parties. In such an action, the plaintiff may recover, as he should, his actual and proper damages, proportioned to the value and extent of his undivided interest in the exclusive right, without regard to the amount which his co-proprietor has received by means of the infringement. And there is certainly nothing in the language of the statute which authorizes this form of action, or rather recognizes it, for this form of action was given by the common law (Curt. Pat. §§ 257, 258), to prevent the action from being sustained in such a case; for, the action on the case, under the fourteenth section of the act of 1836, may be brought in the name or names of the person or persons interested, whether as patentees, assignees, or grantees of the exclusive right within and throughout a specified part of the United States. Indeed, no satisfactory reason is perceived for holding that the part owner of a patent right cannot, like the part owner of a chattel, have his remedy, by an action on the case, against his co-proprietor, for the exclusive appropriation of the joint property, in the same form as though the plaintiff were the sole owner, and the defendant a stranger; the reduction of the amount of damages to be recovered, to a proportionate share of the value of the property appropriated, being, in both cases, the natural and necessary consequence of the partial ownership by the wrong-doer.

In the case of the joint owners of a patent right, the ordinary action for an infringement is, it appears to me, the most appropriate and simple remedy, even if an action of account could be sustained. In an action of account, the amount of profits received by the joint owner would ordinarily determine the aggregate sum of which the plaintiff would recover his just proportion. And, it might well happen, indeed it would most usually be the case, that the sums received by the joint owner would be either much more or much less than the actual damages sustained by the injured party. The party selling territorial rights, or granting licenses, or selling machines, might wilfully or systematically sell the right at an insignificant price, and certainly this conduct on the part of the wrong-doer should not, and, in the appropriate form of action, would not, reduce the recovery of the party injured.

The plaintiffs must have judgment on the demurrer, with leave to the defendant to amend on payment of costs.

[For other cases involving this patent, see note to Pitts v. Wemple, Case No. 11,194.]