# PEOPLE v. WATERFORD & STILLWATER TURNPIKE COMPANY.

### March 1866.

A non-performance of a condition in the charter of a turnpike company, in respect to the mode of constructing and maintaining the road, is in itself a misuser that will forfeit the franchise of the corporation.

The provisions of, *L.* 1847, p. 255, c. 210, § 32,—requiring turnpikes to be bedded with stone, gravel, or such other material as may be found on the line thereof, *so as to form* a hard surface,—requires a hard and durable material, and is not satisfied with ordinary soil, if stone or gravel can be found within one or two miles along the line.

The word " arch " (as used in road laws, of the arch of a road), means that the center of the bed of a road should be rounded up. The mere making of side ditches does not satisfy the requirement of an arch.

The certificate of an official inspector, that a turnpike has been constructed according to the statute, is not conclusive upon the people, in an action by them to vacate the charter of the corporation for misuser.

The falsity of such a certificate need not be alleged in the complaint in such action.

The People brought an action, in the supreme court, against the Waterford & Stillwater Turnpike Company, to obtain a forfeiture and dissolution of defendants' corporation, for a failure to construct and maintain the road according to law.

By section 430 of the Code, it is declared that the charter of any corporation may be vacated or its existence annulled, whenever such corporation shall,—1. Offend against any of the provisions of the act creating . . . . such corporation ; or, 2. Shall violate the provisions of any law, by which such corporation shall have forfeited its charter, by abuse of its powers ; or, 3. Whenever it shall have forfeited its privileges or franchises, by failure to exercise its powers ; or, 4. Whenever it shall have done or omitted any act which amounts to a surrender of its corporate rights, privileges and franchises ; or, 5. Whenever it shall exercise a franchise or privilege not conferred upon it by law.

The complaint in this action set up two distinct and independent grounds whereby the charter of the company had been forfeited and should be annulled and vacated :

1. That the defendants had not constructed their said road and the bridges thereof in the manner required and specified by law.

2. That the defendants did not keep and maintain their said road in the state and condition required by law, but had willfully neglected to make, mend and repair said road, whereby the same had become dangerous for travelers and teams, and had willfully neglected to keep the surface thereof covered with pounded or broken stone, gravel, slate or other hard substance, as required by law, and that defendants had willfully neglected and allowed, and still neglected and allowed, the bridges over the several streams over which said road passes, or some of

them, to be and remain broken down and decayed, so that the same were wholly unsafe for passage, and contrary to the statute, and that said defendants, notwithstanding said road was very badly out of repair, had continued to demand and receive tolls at the several gates so as aforesaid erected on said road.

On the trial it appeared that defendants' turnpike ran over the bed of an old turnpike known as the Waterford & Whitehall Turnpike; and plaintiff, to show that the old company was deemed dissolved, put in evidence (subject to an objection and exception by defendants) two judgment rolls against the old company, on which execution had been issued and returned unsatisfied; and also proved that they had not done any business for twelve or fifteen years. Defendants put in evidence certificates of the turnpike inspectors of Saratoga county, in which defendants' road was built, by which it was certified that the road had been properly made and completed.

At the close of the case, defendants asked the court to charge, that the means required to construct the road were those usual in constructing turnpikes, and did not require the company to use extraordinary and enormous expense. The court refused so to charge, but read to the jury sections 31 and 32 of L. 1847, c. 210, and charged that defendants were bound to comply with that statute. To this refusal and charge defendants excepted.

Defendants then asked the court to charge that the statute did not require the road to be maintained with a hard and even surface during the whole year, regardless of rains and bad weather in the spring. The court so charged, but added, that defendants must first comply with the statute in building their road, and that it was a question for the jury to find from the evidence, whether the road had been kept in repair according to the spirit and intent of the statute. To this charge defendants excepted.

The court also charged, that if the defendants had neglected to bed and construct their roads at the bad spots described by the witnesses, substantially as required by the statute, and in consequence thereof, the inconveniences stated by the witnesses had been, and were, greater than they would have been by a

due construction, that there was a sufficient cause for the for-feiture of their charter. To this charge defendants excepted.

The court also charged, that the word " arch," found in the statute in connection with the bed of the road, by its meaning required that the center of the bed of the road should be rounded up, or be highest at the center. To this defendants excepted.

Plaintiffs had judgment that defendants' corporation be dissolved.

*The supreme court,* at general term, held that none of the exceptions to the evidence were well taken, except the one to the admission of the evidence in regard to the old Waterford & Stillwater company; and that, since that evidence was so completely irrelevant and immaterial, that it could not possibly have had any effect on the determination of the issues in the case, it was not cause for a new trial. The court also held that the certificate of the road inspectors was not con-clusive as to the original construction of the road.

Defendants appealed to this court.

*E. F. Bullard,* for defendants, appellants.—There should be a new trial for the error in allowing evidence in regard to the old corporation. The cases cited to prove that where the court can see that the evidence erroneously admitted could have had no effect on the jury, they will deny a new trial, do not come up to the one at bar. Forrest *v.* Forrest, 25 *N. Y.* 501, was a divorce case, and the verdict was merely to inform the con-science of the equity judge. It does not apply to an action at law. In City Bank of Brooklyn *v.* Dearborn, 20 *N. Y.* 246, evidence was rejected because immaterial. The fact offered would have been no defense. The inspectors' certificates were conclusive. People *v.* Kingston Turnpike Co., 23 *Wend.* 194, arose on demurrer, and the point was not directly raised, and NELSON, J., there placed his decision on the ground that the inspectors were appointed upon the application of the com-pany. In this case the inspectors were appointed by the board of supervisors, and were public officers. 2 *R. S.* 5 ed., 455, §§ 40, 41. The English cases were generally decided under cer-

tain tyrants, to get rid of corporations, and are not such uncon-
strained judicial opinions as should be followed here. The
court erred in submitting the construction of the statute to
the jury. 6 N. Y. 64. The court erred in the construction of
section 32 of the statute. The other material mentioned need
not be a hard material. The certificate of the turnpike inspect-
ors was not conclusive. People v. Kingston Turnpike Co., 23
Wend. 194; People v. Fishkill Plank Road Co., 27 Barb. 445;
People v. Rensselaer Ins. Co., 38 Id. 323. The evidence as to
the existence of the old corporation was wholly immaterial
and could not possibly have worked any harm to the defend-
ants, and its admission is no ground for reversing the judg-
ment. Forrest v. Forrest, 25 N. Y. 501, 511; Huntington v.
Oankey, 33 Barb. 218; City Bank v. Dearborn, 20 N. Y. 246.

John H. Reynolds, for plaintiff, respondent.—The submission
of specific questions to the jury was authorized by statute.
Code of Pro. § 201. The action was authorized by statute, and
takes the place of an old information in the nature of a quo
warranto. Code of Pro. §§ 428, 430; People v. Kingston
Turnpike Co., 23 Wend. 193; People v. Bristol Turnpike Co.,
Id. 222; People v. Hillsdale Turnpike Co., Id. 254; The Pres-
ident, &c. v. People, 9 Barb. 175.

DAVIES, Ch. J. [After stating the facts.]—Assuming the
facts found by the jury to be legally ascertained, it follows
from them that the judge at the circuit properly directed a ver-
dict for the plaintiffs. When the facts are undisputed or set-
tled, then the proper verdict is purely a question of law, and
the direction of the court, if in accordance with the law on the
facts assumed, is not the subject of exception.

Section 32 of the general act, under which the defendants
were incorporated, directs how the road to be made by a com-
pany incorporated under it, to make a turnpike road, shall be
constructed

The first and second questions submitted to the jury are in
the identical language of section 32 of the act, which contains
the directions for the manner in which the road shall be con-
structed, omitting the requirement that the road shall be at

least four rods wide. Upon these facts being found by the jury, it was established that the defendants had not constructed their road in the manner required by law. What were the consequences resulting therefrom ? Clearly that they had violated the requirements of the statute under which they were incorporated, and had consequently forfeited all their privileges and franchises as a corporation. People *v.* Kingston & Middletown Turnp. Co., 23 *Wend.* 193; People *v.* Bristol, &c. Turnp. Co., *Id.* 222; People *v.* Fishkill & Beekman Plank Road Co., 27 *Barb.* 445. It was well said, in the case first cited, that the provisions of our statutes "obviously intended that corporations should fulfill the conditions and perform the duties enjoined by the fundamental law of their creation, as the terms upon which to enjoy their privileges. The principle is not new; it has been always so held at common law as fundamental. Lord HOLT said (London City *v.* Vanacre, 1 *Ld. Raym.* 498): 'All franchises which are granted are upon condition that they shall be duly executed according to the charter that settles their constitution, and *that* being a condition annexed to the grant, the citizens cannot make an alteration; but if they neglect to perform the terms of the patent, it may be repealed by *scire facias.'* . . . . "A nonperformance, therefore, of the conditions of the act of incorporation is deemed *per se* a misuser, that will forfeit the grant even at common law (citing 12 *Mod.* 271; *Cruise,* tit. "Franchise," §79; *Willc. on Corp.* 334; *Ang. & A. on Corp.* 510, and cases there cited)." And it was argued in the opinion that the franchise to a corporation was well likened to that of a public office, which latter was held upon the implied condition of diligently and faithfully executing the duties belonging to it, and which might be forfeited by general neglect or willful refusal to perform. And NELSON, Ch. J., says: "The ingredient of a bad or corrupt motive need not enter into the cause; it is enough if the duty is neglected or designedly omitted." He further appropriately adds, in reference to corporations of this character, "that their usefulness as well as public favor, depend upon an honest and faithful fulfillment of the duties they have assumed. It is the neglect of these, the failure to live up to the fundamental law of their being, that

has mainly contributed to the doubt as to the wisdom of their creation and the disfavor with which they are now regarded by many. Their own well-being as well as the public interest will be best consulted by holding them to a strict accountability. The terms and conditions of their grant being settled and accepted, they ought not to be allowed to act beyond its scope and end, nor come short of it."

The court properly submitted to the jury the question whether or not the defendants had constructed their road in compliance with the requirements of the statute. It was no error in the judge to read from the statute, to enlighten the jury as to their requirements, and no question was made, that there had been a substantial compliance therewith. If the defendants had desired to bring that question up for consideration, they should have requested the judge to charge the jury that a substantial compliance with the requirements of the act was all the law required of them, and that if the jury found there was a substantial compliance, then they were to find that the road had been constructed in the manner called for by the statute. If such requests had been made and refused, it is clear, upon the authorities cited, such refusal would have been error. The jury having found that the road had not been constructed in the manner required by the statute, it follows clearly that the plaintiffs were entitled to a verdict in their favor, and it also follows that the judgment was correct; unless there was some error committed in the admission or rejection of evidence, or in the charge made to the jury; or unless the inspectors' certificates which were set up as proving that the defendants had made and completed their road, according to the true intent and meaning of the statute, are conclusive evidence that it was so made and completed. These positions will be considered in the order above stated.

*First.* It is now urged that the admission of the two judgment rolls against the Whitehall and Waterford Turnpike Company were erroneously admitted. It is not seen how the fact of the recovery of these judgments, and that they remained unsatisfied and unpaid, was at all material or pertinent to any inquiry involved in the trial of this action. The history or proceedings of that company had no legitimate or

necessary connection with the issues made on this trial. We
have seen that they were in fact but two, namely, whether the
defendants had complied with the requirements of the statute
in the construction of the road, and, second, whether they had
kept the same in repair, as required by law. This evidence,
being wholly irrelevant and immaterial, worked no harm or
injury to the defendants, and, even if there was error in its
admission, it furnished no ground for reversing the judgment.
Forrest v. Forrest, 25 N. Y. 501, 511; Huntington v. Conkey,
33 Barb. 218; City Bank of Brooklyn v. Dearborn, 20 N. Y.
244, 246.

*Second.* It is not perceived that any error was committed in
the charge. The questions submitted were in the discretion
of the court, and seem to be proper and legitimate, to the
proper issues to be determined. The facts covered by the
questions propounded to the jury, were vital to the plaintiff's
right to recover, and were distinctly embraced within the
pleadings. The first request to charge was clearly immaterial
and improper, and the court properly directed the attention of
the jury to the language of the statute as to the mode and
manner of the construction of the road. The requirements of
the statute, in these particulars, was vital to the inquiry
whether the defendants had complied with them; and the
second request to the court, to instruct the jury that the
statute does not require the road to be maintained with a hard
and even surface during the whole year, regardless of rains
and bad weather in the spring, was clearly unwarranted. The
statute does not make any such exception, and there is nothing
in it to warrant any such discrimination. The court would
have been justified in a refusal to make it. But it is beyond
all controversy that the defendants were inexcusable for a non-
compliance with the requirements of the act in the construc-
tion of their road, and the question was properly one of fact,
to be determined by the jury, whether the defendants had kept
their road in repair, according to the spirit and intent of the
statute. This was placing this inquiry before the jury in a
most favorable aspect for the defendants, and excludes the idea
that the court instructed or intimated to the jury, that a
literal compliance with the terms of the statute was to be

established or shown. The other portions of the charge excepted to are of no significance, and the charge of the court in these particulars was unexceptionable. The first was, that if the jury came to the conclusion that the statute requires that the bedding of the road must be made otherwise than by merely drawing gravel on the top, then they will find that the road was not properly bedded. It is very clear that the statute required something else than drawing gravel on the top of the road to complete its bedding, and therefore the jury was properly instructed that if they found this only to be done, then they would find that the road was not properly bedded.

The further charge, that the fair construction of the language of section 32 of the statute, " or such other material as may be found on the line thereof," meant such other hard or durable material as stone or gravel, and could not be supposed to be satisfied with a poorer material than the natural road-bed, would seem to be an obvious inference from the language of the statute. It certainly contemplates that the bed of the road is to be made of stone, gravel, or some such other material as may be found on the line thereof, and the face thereof was to be made of stone or gravel, so as to form a hard and even surface. The exception goes to both branches of the proposition stated, that this language meant such other hard or durable material as stone or gravel, and could not be supposed to be satisfied with a poorer material than the natural road-bed. Whatever doubt there may be as to the correctness of the first proposition, there can be none as to that of the last, namely, that the statute would not be satisfied with a poorer material than the natural road-bed. The legislature evidently contemplated that the bed of the road was to be made of stone or gravel, or such other material of a like nature as might be found on the line of the road. This clearly contemplated that something was to be added to the natural condition of the road-bed better than it, and therefore the court properly told the jury that this provision was not satisfied by the addition of something poorer than the natural road-bed.

The other part of the charge excepted to was proper. If the defendants had neglected to bed and construct their road, at any part of it, substantially as required by the statute, this

was a sufficient cause of the forfeiture of defendants' charter, and it was wholly immaterial whether in consequence thereof the inconveniences stated by witnesses would have been and were greater than they would have been by a due construction thereof. The extent of the inconveniences of the witnesses was not a legitimate subject of inquiry, and the only essential inquiry was whether the road had in fact been constructed substantially in compliance with the statute. The charge must be understood as calling the attention of the jury, as the major proposition, to the fact whether or not the road had been substantially constructed in accordance with the statute, and that the reference to the inconvenience of the witnesses was not a controlling or important part of the proposition. As part of the proposition was undoubtedly correct, even if the other portion was not, the exception, being general, must fail.

There can be no doubt that the word "arch," as used in the statute, required that the center of the bed of the road should be rounded up or be highest at the center, and the court was clearly right in so charging. It is difficult to see how the arch of the road could be made or constructed without the center being higher than the sides. The arch must necessarily form a segment of a circle, and the central point of the arch must be the highest point in the segment of a straight line drawn from the two extremes of the segment. It is an impossibility that the road-bed could properly be an arch without its central point being the highest, assuming, as we must, from the language used, that the legislature intended what they said, that the arch of the road should be eighteen feet wide. It is apparent from this language, that they did not intend that the bed of the road should be level or concave. In the former event, we know that the water falling in it, must necessarily remain there, until wasted by evaporation or by sinking into the ground; in the latter, it must settle or run down to the center of the road, there to remain until dispelled in one or the other of the modes suggested. This certainly was not the intent of the legislature. They proposed that the bed of the road should be arched so that it might easily shed water, and thus, as far as possible, remain dry and in good condition for traveling. I see nothing, therefore, objectionable in the charge.

The certificate of the inspectors, that the road had been constructed according to the true intent and meaning of the statute, was not conclusive upon the people, in an action of the nature of this. *Prima facie*, it was sufficient to authorize the defendants to erect toll-gates, and to receive and demand tolls. And perhaps it could not be impeached collaterally in an action brought by the company, to recover such tolls or the penalties incurred for their non-payment. This point was distinctly passed upon in the case of People v. Kingston & Middletown Turnpike Co. (*supra*), and the supreme court then held, that the report of three inspectors made to the governor, that the road had been completed in a workmanlike manner, in conformity with the requisitions of the law, and his license thereupon to erect toll-gates, and to demand and receive tolls, were not conclusive upon the people in an action of a like character to the present. It is very apparent that the legislature never intended to make such certificates conclusive. It is essential to the preservation of the rights of the public, and to insure fidelity on the part of corporations to whom great and valuable privileges and franchises are granted, that the people should not be estopped from an inquiry whether or not the conditions precedent to their enjoyment had been complied with on their part.

The proper judgment has been rendered upon the facts found by the jury, and the judgment should be affirmed, with costs.

LEONARD, J.—The objections and the exceptions taken at the trial were very numerous, but the following only have been discussed.

1. The road of the defendants runs over the bed of a turnpike, formerly belonging to an incorporated company called the President and Directors of the Waterford & Whitehall Turnpike. Evidence was admitted, against the objection and exception of the defendants, showing that this old corporation was insolvent, had not repaired the road, taken toll, or done any business for twelve or fifteen years; that the directors were all dead but three, and that there was an entire abandonment of the road and a dissolution of that company.

This evidence had not the slightest materiality, and it is impossible to see any reason for offering or admitting it. It was not referred to in the charge, and formed no ground for any of the numerous requests subsequently made by the defendants' counsel in respect to the matter upon which instructions were to be given to the jury. Three questions were finally submitted to the jury upon which they found specially. The evidence so objected to had no relation to either of the questions, and could have had no influence upon the answers found by the jury. When the evidence is wholly immaterial, and can have no possible effect upon the court or jury, its admission, although erroneous, cannot be magnified so as to entitle a party to a new trial, or a reversal of the judgment. 37 *Barb.* 300; 1 *N. Y.* 519; 20 *Id.* 246; 33 *Barb.* 218, 227.

2. The defendants' counsel objected to the admission of evidence showing the condition of the road from the time that the defendants began to take toll from passengers down to the commencement of the action, and, his objections being overruled, he excepted.

The evidence was clearly within the issue. The complaint states the duty of the defendants to construct and keep in good repair the said road, twenty-two feet wide, bedded with stone, gravel, sound wood, or other hard substance, well compacted, and of sufficient depth to secure a solid foundation, and to face it with gravel or broken stone, not less than nine inches in depth, in such a manner as to secure a firm and even surface, rising in the middle by a *gradual arch,* with ditches on each side; and that the defendants were bound to erect and maintain good and sufficient bridges over all the streams which were passed by the road, and to keep the bridges and the road in good condition, and the surface of the road smooth and even, as pounded or broken stones, slate, gravel or other hard material would admit. It is then averred that the defendants never constructed the road or bridges as required as aforesaid; that they have not for the last ten years kept and maintained the road in the condition required by law, but have willfully neglected to make, mend and repair the road, and have allowed it to remain out of repair, unsafe and dangerous to pass with loaded teams, and have willfully neglected to keep the surface

covered with pounded or broken stones, gravel, slate or other hard material; and have willfully neglected and allowed the bridges over the streams which the road passes to remain broken down and decayed, unsafe for the passage of persons, teams, &c., and that they still collect toll, &c.

It is entirely clear that this issue called for the very evidence which was admitted under the inquiry objected to.

The averment of greater width than the act required was immaterial. The evidence was still admissible, although a forfeiture could not be adjudged for the want of sufficient width, if found to be as wide as the statute called for.

It was also urged that the complaint was not specific, and that the certificates of the inspectors of turnpike-roads, of the completion of the road in conformity with the law, was conclusive upon the plaintiffs as to the construction. The evidence covered only the facts specified in the averment of breaches in the complaint. The complaint is specific as to the duty of the defendants, and also in respect to their willful neglect, in certain specified particulars, to comply with the law which prescribed the defendants' duty.

The certificates had not been introduced when the plaintiffs' evidence was given in respect to the construction; but if it had been, the evidence was still admissible. The certificates were presumptive evidence only for the defendants of the proper construction of the road to entitle them to begin to receive tolls. Nor was any averment required in the complaint in respect to the falsity of the certificates. If they were false it could not be anticipated by the plaintiffs, that the defendants, who knew better than anybody else how the fact was, would offer them as evidence. It would have been a mere pleading of evidence to have referred to the certificates in the complaint, and to have there alleged their falsity. The certificates had nothing to do with the issue to be framed by the pleadings.

3. The interrogatories finally submitted to the jury do not embrace anything respecting the sufficiency of the bridges, nor as to their width. The inquiries relate to the road only. The jury could not, therefore, have found against the defendants, on

account of a defect in the breadth or repair of the bridges, as supposed by the defendants' counsel in his sixth point.

4. The judge was requested to charge that the defendants were not required to use extraordinary and enormous expenses in constructing the road. The judge declined so to do, but read the provision of the statute directing how the road should be constructed, and charged that the defendants were bound to comply with the statute. The defendants excepted to the refusal, and also to the direction given.

The request was too broad. No evidence had been offered to show what would be ordinary or common expense, or that the road could not be constructed within such limits; nor that any extraordinary or enormous expenses would be incurred in conforming to the requisition of the statute which was read to the jury. There was no error in directing the jury that the statute must be complied with.

Every argument for supposing that the jury could be unfavorably influenced by these remarks of the judge, was removed by the next paragraph of the charge, as shown by the case. They were there instructed that the defendants were not required to maintain the road with a hard and even surface, regardless of rains and bad weather in the spring; and the jury were then directed that the defendants must comply with the statute in building the road, and that they must decide from the evidence whether the road had been kept in repair according to the spirit and intent of the statute.

5. There is no request or exception on the subject of the neglect of the defendants being willful or malicious. The evidence renders it apparent that the defendants knew the condition of their road. It cannot be supposed that the road could have been so out of repair as to be nearly impassable by teams, in the spring and fall, in many places, for several years, without the defendants being chargeable with such knowledge as must constitute willful and malicious negligence. Negligence with knowledge is intentional, and includes the willful and malicious omissions of duty mentioned in the statute. *L.* 1854, p. 167, c. 87.

6. It is said that the court submitted to the jury the construction of the statute in relation to the manner of bedding the road.

III—38

The duty of interpreting the law of course devolved upon the court, but I do not think the objection is well founded.in fact.

The judge said, as it appears from a paragraph of the case, that "if the jury came to the conclusion that the statute requires that the bedding of the road must be made otherwise than by merely drawing gravel on the top, then they will find that the road was not properly bedded."

In that connection he proceeds to instruct the jury further in respect to the bedding, that the fair construction of the statute meant such other hard or durable material as stone or gravel, and could not be supposed to be satisfied with a softer or poorer material.     2 R. S. 5 ed. pp. 481, 499.     The defendants excepted to each paragraph separately; but the latter direction modifies and explains the former, and.left the jury no opportunity for exercising their own discretion as to the interpretation of the statute.

If, however, the judge left the construction of the statute to the jury, it was the more favorable for the defendants, inasmuch as the proper interpretation required. the judge to, inform the jury that the statute required a bedding of some hard or durable material, and could not be satisfied by putting a facing over the natural soil, or a bedding of clay, as was done in many places.     The defendants might have had a more favorable construction from the jury than the court could give them...     But I think no such subject was left to them.

7. The defendants, however, insist that the statute permits the use of the ordinary soil for bedding the road.   2 R. S. 5 ed. p. 499, § 98.

It is provided by the statute that the road "shall be bedded with stone, gravel or such other material as may by found on the line thereof."     It is in evidence that there was stone and gravel in great abundance within a short distance of the worst and most impassable parts of the road. · There was no occasion to inquire what "other material," which might be found on the line of the road, was referred to by the statute.     There was an abundance of stone and gravel along the line of this road, but the natural soil, without any bedding, was proven to be its condition in several places.     If there had been no stone or

gravel, and wood had been plenty, perhaps logs or timber might have satisfied the statute. I think it clear that clay, or the ordinary soil, where that is not gravel or some other hard material, does not answer the requirements of the law. There is no necessity for any such provision if clay or ordinary soil of a soft and tenacious quality can be used. There may be other good material besides gravel or stone to be found along the line of a road, and the statute permits such to be used. The words "along the line" extend to a reasonable distance each side of the line; and, if stone or gravel, or other material for making a hard bed, cannot be found nearer, the distance of one or two miles would still be along the line of the road, and must be sought for the bedding. Nor can the "arch" of the road, formed by the bedding and facing, be dispensed with by the substitution of ditches on each side. "Good and sufficient ditches on each side, wherever the same is practicable," are to be made in addition to the bedding. The "arch" designates the shape of the bedding and facing. 2 *R. S.* 5 ed. 480, § 20; 499, § 97. There was no error in the charge.

The defendants also object because the court directed the jury to render a general verdict for the plaintiffs, after having found specially in answer to certain interrogatories propounded under the direction of the court.

A general verdict appears not to be necessary or required by the Code of Procedure (§§ 260, 261). The court may in all cases instruct the jury, if they render a general verdict, to find upon particular questions of fact in writing (§ 261). Where the special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly (§ 262).

The court can now treat the case as if no general verdict had been rendered. The general verdict, being immaterial, may be disregarded. The judgment was to be rendered by the court, as the law applicable to the facts, as found, required. Such would be the result, under the foregoing provisions of the Code, which way soever the general verdict had been rendered by the jury. United States Trust Co. *v.* Harris, 2 *Bosw.* 75. The facts found established a forfeiture from which the defendants can be relieved only by the legislature. Without regard to the

general verdict, assuming what the jury had found for the defendants, the judgment of the circuit must have been rendered by the court, as it was, for the plaintiffs.

These were all the questions discussed on this appeal, and I now reach the conclusion that the judgment below should be affirmed, with costs.

All the judges concurred, except PORTER, J., who did not vote.

Judgment affirmed, with costs,