CONSOLIDATED FRUIT JAR COMPANY, Respondent, *against* JOHN L. MASON *et al.* Appellants.

(Decided February 5th, 1876.)

When a patentee in an agreement for the formation of a corporation, for a valuable consideration, transfers to the corporation his patent, and agrees that any extension of the patent shall be for the benefit of and belong to the corporation, and afterwards, while a trustee of the corporation, obtains a reassignment of the patent for the purpose of obtaining an extension, obtains an extension, but before doing so secretly grants to a third party a license to use and make the patented invention under the extension, and then assigns the extended patent to the corporation, such a grant is a violation of trust, a fraud upon the corporation, and the use of the license by the grantee, with notice, may be restrained by injunction.

By an agreement, otherwise valid, made prior to an application by a patentee for a

renewal of his patent, a person may acquire from the patentee the right to such renewal when obtained, and such agreement is not in fraud of the law which allows such renewal only to the patentee.

A judgment in an equity case will not be reversed on account of the admission of irrelevant evidence on the trial, unless the appellate court is satisfied that the decision of the judge who heard the case was improperly affected by it.

APPEAL by the defendants from a judgment of this court entered on a decision made by Judge JOSEPH F. DALY, at special term.

The facts are stated in the opinion.

*Frederick R. Coudert*, for appellant John L. Mason.

*F. J. Fithian*, for appellant John K. Chase.

*W. H. De Camp* for appellant Henry F. Johnson.

*Samuel G. Courtney*, for respondent.

ROBINSON, J.—By virtue of an agreement dated December 12, 1871, executed by numerous parties thereto, the plaintiffs became the owners of two certain letters patent theretofore granted to the defendant John L. Mason (one of the parties to the agreement), one dated November 25th, 1858, and numbered 22,129, and the other dated November 30, 1858, and numbered 22,186, which extended for fourteen years from their respective dates. Said Mason therein covenanted, in consideration of $5,000, then paid him by the plaintiffs, to use his influence and best efforts and services to procure renewals thereof for the benefit, and at the expense of the company; that to enable him to effect that object, plaintiffs subsequently, by instruments dated February 19th, 1872, re-assigned said letters patent to him; that his application, made at the expense of the company, was successful, and resulted in his procuring their renewals or extensions for further terms of seven years, to wit, from November 25th and 30th, 1872; that he subsequently, by assignments dated January 6th, 1873, assigned such renewals or extensions to the company. This controversy grows out of a license granted

by said Mason to the defendant John K. Chase, bearing date November 30th, 1872, to use said invention for the full terms of the original patents and their several extensions, or any reissues of the same, which plaintiffs seek to have set aside as a fraud upon their rights. Mason discloses no consideration for the assignment by the company of those patents to him, otherwise than in aid of his covenant to procure such renewals or extensions, but contents himself with a denial that the plaintiffs, at the time of the granting by him to Chase of such license, had any rights, equities or interests in the extended patents; he fails to show how they had become divested of such interests. He concedes he paid nothing therefor, and that they were procured *for the purpose of enabling him to procure such extensions.* He asserts that he executed the license at the request of Boyd, the president of the plaintiffs' Board of Trustees, and it bears the name or signature of Mr. Boyd as a subscribing witness to its execution. He, as well as Boyd, were such trustees from the time of the formation of the company, and during all these transactions with it. Their duty under that relation precluded them from acting adversely to its interests, or acquiring benefits or advantages from secret purchases or other transactions to its prejudice, and it is manifest that the innovation upon the ownership and right to the exclusive use of these patents that was contemplated or made possible by that license was of a most serious character, being valued by Chase at $100,000, and for which, in a new company, called the Standard Union Manufacturing Company, subsequently formed through Mason and Johnson's agency, he received $20,000 of its stock.

The defendant Johnson made no defense on the trial beyond that presented by Mason, and the evidence clearly shows that he was merely used by Mason as a facile instrument to effect a fraud upon the plaintiffs by an ostensible purchase of the license from Chase for the benefit of Mason, to be secured through the formation of the new company. Whatever Mr. Boyd may have done towards promoting the execution of the license to Chase it is not shown, in any respect, that he had any authority from the Board of Trustees,

or that his acts in that matter were ever authorized or sanctioned by the company. It was most probably procured by him in order that it might be held by Chase as trustee for the company and as a means of guarding against any treacherous refusal on the part of Mason to assign the extended patents; and the proof warrants this conclusion. Boyd and Mason being both trustees of the company, and acting without authority from the Board of Trustees or the company, were violating their trust in attempting an act so well calculated to be operated to its detriment, and to be used, as it has been, by designing and unscrupulous men to advance their private interest to its prejudice. The judge below well found that the execution and granting of this license to Chase was a fraud upon the company, either positive or constructive. It clearly appears it was without the authority or consent of their *cestui que trust* and an abuse of their duties as trustees (Story Eq. Jur. § 258). Neither Mason, Chase or Johnson make any exhibition of good faith or fair dealing in any of their acts with reference to this license ; but they all appear to have been in covert hostility to the equitable rights fairly acquired by the plaintiffs in their original bargain with Mason.

Exceptions are not available as such in a court of equity. In *Forrest* v. *Forrest* (25 N. Y. 510) the Court of Appeals say: " Courts of equity, however, have been governed by very different principles from those of a court of law in granting or refusing new trials of issues of fact. Though evidence has been improperly admitted or rejected, if a court of equity was satisfied the verdict ought not to have been different, it would not grant a new trial upon mere technical grounds. Upon principles well settled, * * a new trial would not be granted * * unless for substantial errors showing that a fair trial has not been had, and *affording reasonable doubt as to the justice of the result*." The only exception urged or pressed on the argument, was to the admission by the judge of the proceedings before the Commissioner of Patents on the procuring of these renewals, in which he made some unfavorable remark against the credibil-

ity of Mason. It was so covered up under a mass of other matter that it would be difficult to regard it as having any weight with the judge, even if a specific objection and exception had been taken to the remark, which was not done, as the exception is one of a most general character and in no way points to any such exceptionable observation of the commissioner.

The findings of fact by the judge are fully sustained by the evidence. The right of the plaintiffs thus to acquire by preliminary covenant from the patentee the right to any renewals or extensions of those patents under existing laws of the United States, is fully recognized in its courts without imputation of the agreement being in fraud of the law allowing such extension only to the patentee. (Laws U. S., July 4, 1836, Brightley Dig. 734; *Hartshorn* v. *Day*, 19 How. 211; *Woodworth* v. *Sherman*, 3 Story, 171; *Washburn* v. *Gould*, id. 135; *Wilson* v. *Rousseau*, 4 How. 646; *Pitts* v. *Hall*, 3 Blatchf. 201; *Goodyear* v. *Cary*, 4 id. 271; *Clum* v. *Brewer*, 3 Curtis C. C. 506; *Nicholson Pavement Co.* v. *Jenkins*, 14 Wall. 452; *Thayer* v. *Wales*, 9 Blatchf. 170; *Ruggles* v. *Eddy*, 10 id. 52.) The judgment should be affirmed, with costs.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Judgment affirmed, with costs.

A motion for a reargument having been subsequently made, it was denied, and the following opinion was written:

ROBINSON, J.—The motion for a reargument is made solely by the defendant Mason. In the matter litigated his position was that of a trustee of the plaintiffs claiming benefits adverse to those of his *cestui que trust* through acts and dealings in which he was concerned, to wit, the granting of a license to one John K. Chase by one Boyd, a co-trustee and president of the Board of Trustees, but unauthorized by that body. Mason well knew or was charged with full

knowledge of the character of that act, and owing " *uberrima fides* " to the company, was precluded in equity from availing himself of any benefit adverse to its interests through any of the transactions complained of, in which Boyd, Chase, and he participated. (Story Eq. Jur. § 321.)

The violation of his duty as such trustee and to his fiduciary relation to the company was clearly disclosed by the testimony. His want of truth in his statements as to any incidental matters arising in the case was of no especial consideration. Crediting all he says, his constructive fraud and breach of duty as a trustee to the interests of his *cestui que trust*, for whom he assumed to act, is patent and uncontroverted. His assumption to act and exercise adverse rights under the irregular and unauthorized license to Chase cannot be justified as against his duty to the plaintiffs. On the argument of the appeal, it was stated by the court that exceptions in an equity case had no such effect as strict exceptions taken on the trial of a suit at law. As to the latter, only such testimony as bear on the point under review are necessarily presented to the court, while in an equity cause the court sit as on an appeal under the civil law in review of the entire case, both as to the law and the facts, and are bound to consider and determine if, upon *the whole case*, any injustice has been done to the appellant by the rejection or admission of testimony that must have improperly influenced the judgment of the court below, or ought to lead to a different decision. The remarks of Ch. J. Church in *Norton* v. *Mallory* (63 N. Y. 433), " that there is no distinction between legal and equitable actions in respect to exceptions in respect to evidence," is clearly *obiter* and unnecessary to a decision of the case. It is contrary to a long line of decisions in the same court. (*Lansing* v. *Russell*, 2 N. Y. 563 ; *Forrest* v. *Forrest*, 25 N. Y. 510 ; *Ashley* v. *Marshall*, 29 N. Y. 503; *Rundle* v. *Allison*, 34 N. Y. 184 ; *In re Livingston*, id. 582 ; *Vandevoort* v. *Gould*, 36 N. Y. 644 ; *People* v. *The Waterford*, &c. *Co.* 2 Keyes, 332 ; *Foote* v. *Bryant*, 47 N. Y. 544.)

In *Tomlinson* v. *Miller* (3 Keyes, 520) the majority of the court expressly refused to sanction the distinction between

exceptions taken on a trial of an issue out of a court of equity and those taken on a trial of such a cause before a single judge, or to give any greater effect to the latter. It is manifest that from the entire structure and functions of a court of equity the mere exception to the admission of evidence as irrelevant or immaterial, can be of no avail, since it is but received for ultimate consideration as to its bearing in any aspect of the case and its importance or relevancy is to be weighed by the judge. If he gives it undue weight and it improperly affects his judgment, the court, on appeal, having the whole merits of the controversy before it, can review and correct any such error; but as a strict exception to a matter presented on trial before a jury, the same reason for regarding the relevancy of evidence received does not pertain or prevail. I can perceive nothing offered as ground for reargument which in this case entitles it to any such further consideration. The motion for reargument should be denied, with costs and disbursements.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Motion for reargument denied, with costs and disbursements.