I. The note in question was given without any good or valu *83 able consideration, and is therefore void. The ostensible consideration was a certain amount of the capital stock of the said bank, which the jury have found was entirely worthless when the bargain was made. The capital of the bank was entirely gone. And where the article sold turns out to be of no value, it is not necessary to show it was returned.
II. The defendant entered into the contract, and gave the note, under a misrepresentation of the officers of the bank as to the value of'the stock; and the jury have found that fact, and that the defendant was induced thereby to enter into the contract. This rendered the contract fraudulent and void. And where the representations are false, and the defendant is injured thereby, the sale will be voidable, although the vendor did not know whether they were true or not. And if there be misrepresentation, without any fraudulent intent, it is still a fraud in law, and will vitiate the contract. And even if the officers of the bank believed in the truth of their representations, it will not exonerate the bank; if such representations were false, it will still be a fraud in law. If the ignorance of the officers, who made the representations- as to the condition of the bank, arose from the unquestionable negligence of such officers, it is as fatal as if the falsehood was intentional.
III. The alleged consideration was illegal, and therefore void. It appeared that the stock transferred to the defendant for the note was (wholly, or in part) stock which the bank had caused to be purchased at auction, and stood in the name of Elijah F. Purdy, one of the directors, in trust for the bank, in violation of the statute. (1 R. S., 589, 3, 1; 3 Corns. 479, 485, 486, Gillet v. Moody; 5 Barb. R. 12, Leavitt v. Blatchford.)
1. The condition of the bank was such as to preclude the idea that such stock was purchased with surplus profits: it was purchased in order to prevent the stock being depressed below a certain figure. 2. And it was illegal to have such stock purchased, or held, in the name of any person in trust for the bank. 3. And if any part of the stock transferred to the defendant, under the contract, was stock thus purchased and held in trust for the bank, (and therefore an illegal consideration,) it rendered the whole contract void ; it being an entire contract, if any portion of the consideration was illegal, the whole contract was void. A *84 contract is entire, whenever the consideration agreed upon is single and entire.
IV. If the contract or act of the "bank, in buying in their own stock and selling it again, was illegal, then the securities taken for it are void. And the bank’s buying the stock in the name of Purdy cannot legalize the transaction.» When a statute prohibits an act, on the part of a corporation, that act cannot be legalized by being done indirectly. (9 Cowen, 463, McCarthy v. Orphan Asylum; 3 Coms. 487, Gillett v. Moody.)
V. The bank practised a deceit upon the defendant, as to the kind of stock they transferred to him, which rendered the contract void. The defendant contracted with the bank to take $10,000 of their original stock, the object evidently being to increase the capital of the-bank, and not to afford individual directors an opportunity to sell portions of their stock at par, when it was selling at auction at a greatly reduced price, even if it could be sold at all. But the bank did not transfer to the defendant any original stock, but, partly, stock which they had illegally purchased at auction much under par, and, partly, stock claimed to be owned by one of the directors. 1. If such stock was held in trust for the bank, the trust was illegal and void, as already shown. (1 R. S. Part 1, Tit. 2, Ch. 18, Art. 1, § 7.) 2. If it was the property of such director, then the bank had no title nor right to sell it, and the sale was void. (1 R. S., 3d ed., in respect to sale of stock not owned by the seller. See also 2 Kent’s C. 603, last ed., note b.)
VI. The note is void, by reason of its having been received and discounted in violation of the statute. (1 R. S. 589, Part 1, Tit. 2, Ch. 18, Art. 1, § 1.) In this case, the evidence is, that the note was received by the bank in payment for stock which the defendant agreed to subscribe for, or take, and that it was discounted. There was, therefore, an entire violation of the provisions of the statute in this respect; and any securities taken contrary to the positive provisions of a statute are void. (2 Kent’s C. 597, 598, 599, last ed.; Chitty on Con. 570.) And a party to such contract may take advantage of such illegality. (Chitty on Con. 570, 571, note; Id. 576, last ed.)
VII. There was error in" the Judge’s directing the general verdict, found by the jury in favor of the defendant, to be changed into a verdict for the plaintiff. It being an action for the recovery *85 of money only, the jury had a right to find a general verdict. (Code, § 261, (216,) p. 274, last ed.) And, as the special finding of facts was not inconsistent with the general verdict, the Judge had no authority to change it under § 262 of the Code.
VIII, It was part of the arrangement, between the bank and the defendant, that the former should hire the banking house of the defendant, at the corner of Greenwich and Duane streets, for two years, from the 1st of November, 1854, at the rent of $2000 per annum, as will appear by the minutes of the board of directors. The bank took possession of the banking house, under the agreement, and transacted their business there, but failed in about thirty days thereafter. The building was not otherwise rented or occupied during the two years, and the bank is indebted to the defendant for the two years’ rent, amounting to $4000.
IX. Upon the whole case, the defendant is entitled to judgment.
By the Court. Bosworth, J.—The
cause of action, stated in the complaint, is a promissory note for $10,000, made by the defendant, dated the 31st of October, 1854, payable 60 days after its date, and alleged to have been made and delivered by the defendant to the bank.
The answer sets up four defences:—
1. It alleges, generally, that the bank paid no value for the note, and obtained it fraudulently from the defendant.
2. That the note was given to the bank for shares of its stock, amounting to $10,000, which stock the defendant bought of the bank, by reason of false and fraudulent representations of its officers, that the stock was worth above par, when, in truth, it was worthless and of no value.
3. That the note was received by the bank, “ for the amount of the stock of the said bank issued to the said defendant, and was discounted by said bank, contrary to the provisions of the first section” of the article of the Revised Statutes of New York, entitled, “ Regulations to prevent the Insolvency of Moneyed Corporations, and to secure the Rights of their Creditors and Stockholders,” whereby, it is insisted, that such reception of the note was unlawful, and that the note is void.
4. That on defendant’s consenting to purchase $10,000 of the stock of the bank, at the request of its officers, and on certain rep *86 resentations made by them as to its value, he, at the request of the bank, to secure the payment of said $10,000, assigned to one of its directors a bond and mortgage, made by one Birkbeck, for $12,933, and at the request, and for the accommodation of the bank, he made the note in question for the amount of the stock, and gave it to the bank, and that the note and bond and mortgage were transferred to the plaintiff at the same time, and are in its possession, as receiver.
It insists that this assignment of the bond and mortgage, and also the note, are void.
The answer then sets up a counter-claim, the particulars of which need not be stated.
When the evidence was closed, the defendant requested the Court to charge several propositions, which “ the Judge stated he should refuse to charge, and should overrule for the purposes of this trial, and should reserve all questions of law for the General Term.” To which ruling of the Judge, the defendant’s counsel then excepted.
The Judge then submitted four questions of fact specially to the jury, and directed “ the jury to answer the said questions specifically, and to find a verdict for the plaintiff for the full amount claimed, subject to the opinion of the Court, on a case to be made, and subject to adjustment.” Fo exception was taken to this form of submitting the cause to the jury, or to the instruction to find a verdict for the plaintiff, except such as may be involved in the previous exception to the refusal of the Court to give the instructions requested.
The jury answered each of the four questions. The case further states, “ that the jury also found a verdict for the defendant; but the Court, deeming the verdict to be inconsistent with the special finding of the jury, upon the questions submitted to them, set aside the same, and ordered a verdict for plaintiff for $11,397.91, subject to the opinion of the Court at General Term, upon exceptions taken upon the trial, and also upon a case to be made, and also subject to adjustment as to the amount.”
“ To which action of the Judge, in directing the verdict to be changed as aforesaid, the counsel for the defendant then and there excepted.”
In our view of this case, in the form in which it is presented, *87 it becomes necessary to determine whether the Court at General Term must treat it as one in which a general verdict has been rendered for the defendant, whereby all controverted facts have been determined in his favor, except those found in answer to the questions specially submitted.
If that view of the case should be taken, the plaintiff cannot have judgment in its favor, unless entitled to it upon the facts found in answer to the four questions, although all the other material facts in issue should be found in favor of the defendant.
In such a view of the case, it would be improper for the Court to look into the evidence, to be influenced by its own conclusions of fact, as it would form them upon the evidence. It can only look at the facts established by the general verdict, and those found in answer to the four questions submitted.
If the latter are consistent with the former, a general verdict for the defendant would entitle him to a judgment. If inconsistent with the general verdict, the special findings must control it, and such a judgment be given as they require.
The Court, at the trial, could not have ordered a general verdict for the plaintiffs, unless of the opinion that, upon the evidence, all the controverted facts, except those embraced in the questions submitted, were clearly with the plaintiff.
It is the province of a jury, in every action for the recovery of money which may be submitted to them, to find either a general or special verdict. (Code, 261.)
The jury were instructed to find a general verdict for the plaintiff, but they disregarded the instruction and found one in favor of the defendant.
According to the case, we are not at liberty to conclude, that on rendering their verdict, the jury were reminded that they had probably forgotten the direction to find a verdict for the plaintiff for the amount of its claim, and that thereupon the jury corrected an unintentional error, and gave a general verdict for the plaintiff.
The case states that the Court set aside the verdict, and ordered one in favor of the plaintiff, because the general verdict was deemed to be inconsistent with the special finding upon the questions submitted. >
It could not be set aside for any such reason, even if the fact *88 was as the case states it was assumed to be. Judgment might be given for the plaintiff, notwithstanding, if the facts specially found warranted it, but the general verdict would remain on the record in the form it was rendered.
Although the general verdict was vacated at the trial, we do not feel at liberty, in disposing of the motion before us, to decide the case otherwise than as we should deem it our duty to do, if the verdict had been left as the jury rendered it.
In this view, the defendant has recovered a general verdict in his favor, and certain facts have been specially found.
Do the facts, thus specially found, entitle the plaintiff to a judgment, although all the other material facts, put at issue by the pleadings, are to be deemed to have been found for the defendant ?
As to the first and second defences, it is enough to say, that the jury have found that the defendant purchased $10,000 of the capital stock of the bank; that, although its value was misrepresented, the representations made were merely expressions of an erroneous but honest opinion. Its value was a matter of estimate and opinion, and there can be no pretence that any thing was done to mislead the defendant. He was invited to examine the condition and assets of the bank, and had an opportunity to do so.
The special finding negatives the defence of fraud, and .the stock, although found to be worthless, had enough of value to uphold a promise to pay the stipulated price. To constitute a defence to an action to recover the contract price for property sold, it is necessary to prove more than that the vendor entertained and expressed an erroneous opinion as to its value, in which the purchaser chose to confide, instead of exercising his own judgment exclusively, or consulting the opinions of others more competent to judge of it than himself. He must show that some deceit was practised, to put him, off his guard.* (McCracken v. Cholwell, 4 Seld. 133; Johnson v. Titus, et al., 2 Hill, 606; Fay's Adm. v. Richards, 21 Wend. 626; Van Epps v. Harrison, 5 Hill, 63-69.)
Although the jury have found the stock to have been worthless at the time of the defendant’s purchase of it, the evidence is *89 clear that it was sold at auction in the following November, at 82 and 82 per cent.; and that the defendant, in fact, actually sold $2000 of it, in amount, and transferred the other $8000, as security for a loan. It had enough of value, in the absence of all fraud or deceit in the sale, to make the purchaser of it liable to pay the contract price.
With reference to the fourth defence, it is obvious, inasmuch as that asserts that the defendant purchased the stocks, and as the jury have found that it was, in fact, purchased, and without any fraud practised by the bank or its officers, that the defendant should pay the note, as he gave it to the bank for the amount of the stock, although the bank requested, as an accommodation to itself, that this evidence of liability for the purchase should be given. On the theory of the fourth defence, the stock was the consideration for the note, and the note was given for the stock, and this particular obligation was given to accommodate the bank—the accommodation consisting in its having the defendant’s note, which it might possibly use, while the credit was running, instead of the transaction being left to result in a mere claim for stock sold and delivered.
The third defence is the one of most difficulty. That asserts, that the note in question “was taken and received by the said Empire City Bank, for the amount of the stock of the said bank issued to the said defendant, and was discounted by the said bank, contrary to the provisions of the first section” of the article of the statute referred to.
We think it just to hold, that the defendant meant to be understood as alleging that this note was given and received for the stock so issued, or was discounted to furnish the defendant the means to pay for the stock.
We therefore assume, as the most favorable view for the defendant of which the terms of this part of the answer admit, that the note was delivered and received in payment for the stock, or that the note was made and discounted to furnish means to the defendant with which to pay for the stock.
These were the facts which the defendant attempted to establish at the trial; and, on the argument before us, it was contended by the defendant that such facts were sufficiently proved.
Sub. 3 of the 1st section of the article of the Revised Statutes, which is alleged to have been violated, declares it not to be lawful *90 for the directors of any moneyed corporation to discount or receive any note “in payment of any instalment actually called in and required to be paid, or with the intent of providing the means of making such payment.”
This language clearly refers to an original subscriber for stock, and to the payment of the sum so subscribed. The object of this statute is, to require an actual cash payment of the whole subscription ; and sub. 4 is designed to prevent the withdrawal of any part of it, by discounting any note of such stockholder, with intent to enable him to withdraw it.
It becomes material, therefore, to ascertain in what sense the word “ issued” is used in setting up this defence.
The second and fourth defences describe the transaction as a purchase by the defendant of the capital stock of the bank.
The third, fourth and fifth of the defendant’s printed points, presented on the argument of the present motion, assert, that the stock which the defendant purchased, and for which the note in suit was given, was stock which the bank had previously bought at auction, for its own benefit, which purchase is alleged to be illegal, because, as it is insisted, the bank could have had no surplus profits with which it could purchase or pay for it.
The jury have found, in answer to the third question submitted, the fact of an actual purchase of the stock, and of the transfer of it to the defendant.
We think it just to conclude, that the word “issued,” as employed in stating the third defence, was employed as synonymous with transferred or assigned; and that no more was meant to be affirmed, than that the bank had sold and transferred $10,000 of its capital stock, and taken this note in payment, or had discounted the note to furnish means to the defendant to make such payment.
We have not been referred to any statute declaring it to be unlawful for a bank to sell, on credit, shares of its stock which it may have previously purchased, or to take a note for the amount, payable at the expiration of the stipulated credit. Unless such a statute exists, the fact of such a sale, on credit, and receiving the purchaser’s note for it, would not render the note void.*
The fact that the bank had previously purchased this stock at *91 auction, and paid for it out of its capital, instead of its surplus profits, is not alleged in the answer; and that fact, if it were so, would not prevent its acquiring title to the stock so purchased, as between itself and its vendor. To what consequences or penalties the directors, consenting to such a transaction, might be subjected, is a question which does not now arise.
The bank having become owner of the stock, and having sold and transferred it to the defendant, he is liable to pay for it the price at which he bought it.
We conclude, therefore, that there is nothing stated in the third defence, after conceding the fact to be, as the jury have found, that the stock alleged to have been “ issued” was stock “ transferred” to the defendant, on a purchase of it by him from the bank, which can exempt the defendant from liability to pay the note which he gave for it.
If we look into the evidence, with a view to ascertain whether the trial proceeded on the theory of the third defence being such as we have construed it to be, we shall find that it is free from doubt, that the defendant purchased this amount of stock from the bank, after it had been organized and was in full operation.
It was not attempted to be proved that the defendant was an original subscriber. It also appears that the stock was paid for in money. The note was, in fact, discounted; but the evidence is entirely satisfactory, that the bank refused to discount it, to furnish the defendant means with which to pay for the stock, and that after such refusal, it was discounted, upon the collateral security of a bond and mortgage for its payment at maturity; and the evidence is quite strong, that the stock was paid for, by a check drawn on another bank.
As to the supposed counter-claim, we think that none is stated.
It consists of a claim for rent of a building, hired of the defendant for two years from the first of November, 1854, at a rent of $2,000 per annum.
The receiver was appointed the 29th of January, 1855, the note in suit fell due on the 2d of that month, and no rent would be due until November, 1855. Such rent could not be set off in this action.
We think there is nothing in any of the defences alleged, as *92 suming so much of them to be true as stated, as is not negatived by the facts specially found, which can impair the legal effect of the facts established; viz., that the defendant purchased stock of this bank to the amount of $10,000, and agreed to pay that price for it, and that he was not induced by fraud to make the purchase; and, having taken a transfer of the stock on such a purchase, he is liable to pay the contract price. And, if we must assume that the note was given for the stock, we think it is valid, and that judgment should be entered for the plaintiff on the verdict.
Judgment was entered accordingly.

 The City Sank of Columbus v. Bruce & Fox, (17 N. Y. R. 507.)

 The City Bank of Columbus v. Bruce & Fox (17 N. 7. R. 507).