authorized by this agreement, and that it could in any way affect the questions which were to be presented upon the trial of this action. The rules in relation to discovery provide that the party applying shall show to the satisfaction of the court the materiality and necessity of the discovery or inspection sought, the particular information which he requires, and, in the case of books and papers, that there are entries therein as to the matter of which he seeks a discovery or inspection. There is no allegation whatever in this petition that this agreement contains the particular information which the plaintiffs require, or that there is any entry or writing therein which is in any way material to the questions which are to be presented upon the trial of this action. They desire to make amongst the private papers of these defendants an experimental voyage of discovery in the hope that perhaps they may be able to fish out something they may turn to their advantage. It does not seem to us that such a mere fishing expedition should be countenanced by the court, and it never has been heretofore. If a discovery of this kind can be allowed, then the private papers of every competitor in trade may be compelled to be produced for inspection, in the hope that something may be found in them which will subject them to criticism. It does not seem to us that the rule of discovery has ever been carried to any such length.

It is to be observed that all the material allegations in the petition in reference to these questions are made upon information and belief only, without the slightest statement as to the sources of information and the grounds of belief. It has become a reasonably familiar maxim that allegations of this kind contained in an affidavit are of no value. Allegations upon information and belief in a complaint answer the purpose of a pleading, but furnish no proof when contained in a petition or affidavit which is supposed to represent evidence.

We think, therefore, that the motion was improvidently granted, and that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, with leave upon payment of such costs to renew the application upon additional papers. All concur.

---

(70 App. Div. 606.)

### CSATLOS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

STREET RAILWAYS—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

> Where, in an action against a street railway for injuries received while attempting to cross the track, it appeared that plaintiff stepped on the track when the car was but a short distance from him, and that the driver shouted, and attempted to stop the car, and the negligence was principally predicated on the failure to equip the car with a suitable brake, it was error to instruct that notwithstanding negligence on plaintiff's part he could recover if the company, by exercising care, could have avoided the accident.

Appeal from supreme court, New York county.

Action by William Csatlos against the Metropolitan Street Railway Company. From a judgment for plaintiff, and from an order

denying new trial, plaintiff appeals. Reversed. Prior reports: 71
N. Y. S. 254, 72 N. Y. S. 1098, 74 N. Y. S. 1123.

The action was brought to recover for personal injuries sustained by the
plaintiff, a boy 4½ years of age, who was run over on the afternoon of
August 11, 1898, by defendant's west-bound Twenty-Third street horse car
at Second avenue, and, as a result of the accident, lost his leg. The plain-
tiff, accompanied by his mother, who was carrying a younger child, and by
another woman, Miss Mick, alighted from the south side of an east-bound
Twenty-Third street car at the west side of Second avenue, in order to
transfer north, and started diagonally to the northeast corner. As they
were stepping on the west-bound Twenty-Third street track, they heard a
shout, and saw a horse car approaching. The woman stepped back, but the
plaintiff was struck by the horses, and before the car had stopped at the
westerly crosswalk was run over by the front wheel on the north side of
the car. It was testified by a truckman, Harrison, who was standing on
the northwest corner looking across, that when he saw the boy in the
middle of the track, crossing diagonally, the horses' heads were about three
feet from him, and the driver was trying to stop the car. Miss Mick tes-
tified that they were walking across and went to step on the track, when
she heard shouting, saw the car coming, and drew back, and the boy was
then standing on the track screaming, and the horses' heads were about
five or six feet away. The mother testified that the boy was walking be-
tween her and Miss Mick, and when she heard the shout, and jumped back,
the horses' heads were about five yards away, and then when she saw
the child on the track they were four yards away; that the horses were
not going fast and not going slow. The driver of the car, called by the
plaintiff, testified that he did not see the women till he was on top of
them, his horses' heads being about five feet from them, and he did not see
the boy until they had stepped back, and the horses then were right on
him. Further, he testified that, although he had put on the brake and
pulled hard, the car would not stop, and the brake was worn and full of
holes, and of no use to a car at all, and before the accident its bad condi-
tion had been reported; that the car after he applied the brake went 15
feet, but if there had been no defect he could have stopped within 5 feet.
An affidavit of the driver, made just after the accident, gives substantially
the same account, but makes no mention of a defective brake. In behalf
of the defendant there was testimony that the brake was in good order when
inspected, a few days prior to the accident, and that no report of defect
had been made, and that ordinarily the car might be stopped in 12 or
15 feet. It was further testified by one witness that he heard a shout,
and, turning around, saw the women step back, and the child run forward
and get struck, and he was dragged two feet. Another witness testified
that the car first stopped on the east side of the avenue when the people
started across. In charging the jury the court said: "The railway com-
pany * * * was bound to act under the rules of ordinary prudence.
This driver says that it did not; that the brake was defective; and while
the truckman, Harrison, says that he was doing all that he could to stop
the car, and that it happened so suddenly, and the driver himself says that
he put on the brake, the driver says that because the company had fur-
nished him with a car with a bad brake he could not stop. Now, you will
consider all the circumstances, * * * so as to make up your mind
whether he told the truth." No exception was taken to the charge, but the
plaintiff made several requests, among which the following were charged,
the defendant excepting: "Tenth. If the car of the defendant, properly
equipped, could have been stopped in time to have prevented the accident
after the driver saw the child approaching the track, you are authorized to
find that it was negligence on the part of the defendant to have permitted
the accident, even if you find that the person in whose care the child was,
was negligent in permitting the child to get into a position of danger.
Eleventh. It is a rule of law that, notwithstanding negligence upon the part
of the person injured, he may recover if the railway company, after such
negligence occurred, could, by the exercise of ordinary care, have discovered

it in time to have avoided inflicting the injury. Twelfth. If the driver might, by the exercise of ordinary care, have stopped the car, and so have avoided the injury to the boy, neither the fact of the plaintiff's own negligence, or that of his parent or the person in whose care he was, in being on the track, contributed to the accident, constitutes a bar to plaintiff's recovery." The jury's verdict was for $10,000, and from the judgment entered thereupon, and from order denying motion for a new trial, the defendant appeals.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
William H. Leonard Edwards, for respondent.

O'BRIEN, J.   There is no evidence in this record to support a finding that the driver failed to do his utmost, after knowledge that those crossing in front of him were in danger, to avert the accident.   His shouting enabled the women to step back in time to avoid being struck by the horses, and his testimony, supported by that of the witness Harrison, is that he at once applied the brake and pulled in the horses. The witnesses state that the boy went upon the track but a few feet in front of the horses, and the circumstances and manner in which the accident occurred show that only a brief interval of time and space separated the existence of danger and the collision.   Although the car had stopped on the other side when the people started to the northeast corner, there is nothing to show that the driver was not, as were those crossing, suddenly made aware of the danger; and, although it appears that the child was dragged two feet, it is not shown that this was the fault of the driver.   The negligence in fact was predicated upon the failure of the defendant to furnish the car with a suitable brake, and it was upon this theory that the court submitted the issue to the jury.

Not satisfied, however, with the charge, to which neither side took exception, the plaintiff's counsel urged upon the court numerous requests to charge, and introduced propositions of law which, however good in the abstract, were not applicable to the case at bar, and, as will be seen, would necessarily tend, not only to confuse, but to actually mislead, the jury.   Thus, the court charged, at plaintiff's request, the defendant duly excepting, that if the car, properly equipped, could have been stopped after the driver saw the child, there was negligence on the part of the defendant, even if the person with the child was negligent.   The next request went a step further, and charged that "it is a rule of law" that, notwithstanding negligence on the part of the injured person, he may recover if the company might still by care have avoided the accident; and the following request was that, if the driver might have stopped the car and avoided the accident, the fact of plaintiff's negligence contributing to the injury was not a bar to recovery. A request similar to this last was charged in Goodman v. Railway Co., 63 App. Div. 84, 71 N. Y. Supp. 177, and resulted in a reversal of judgment for the plaintiff.   What the counsel had in mind, undoubtedly, in submitting these various requests, were cases like Weitzman v. Railroad Co., 33 App. Div. 585, 53 N. Y. Supp. 905; Green v. Rail-

way Co., 42 App. Div. 160, 58 N. Y. Supp. 1039; and Totarella v. Railway Co., 53 App. Div. 413, 65 N. Y. Supp. 1044. In the Weitzman Case, supra, which is a good illustration, a child five years of age, upon being struck by an electric street car, fell upon the fender, and was carried along for a distance of from 32 to 150 feet, when he rolled from the fender in front of the advancing car, and was run over and killed; and it was held that, assuming the child to have been sui juris, and that his falling upon the fender resulted from his contributory negligence, it was the duty of the railroad company, when the child had reached a position upon the fender, to have prevented the injury and death of the child, if it had time and could have done so by the exercise of reasonable care. As was therein said:

"Whatever the degree of negligence on the part of the individual in the original contact, that negligence culminated in the accident which landed him in the net of the fender. From that moment a new relation existed between the parties, and any act or omission on the part of the defendant amounting to a lack of care demanded by the situation, and resulting in the death of plaintiff's intestate, is sufficient to charge the company with negligence."

In the case at bar, however, there were presented the ordinary questions of negligence and contributory negligence, and there was no suggestion, either in the pleadings or in the testimony, of any new situation being created after the plaintiff had come into a position of danger. Neither the cases referred to, therefore, nor the rule of law invoked by the plaintiff and embodied in the requests, had any application. It had been shown that the driver, with his utmost vigilance and endeavor, could not stop the car, and the testimony would support the inference that the child when the accident occurred was walking between his mother and another woman, and was well taken care of. The tendency of the two first requests and the effect of the last was to instruct the jury that, regardless of contributory negligence, there might be a recovery. Of course, if the jury had found that the parent was negligent in attempting to cross in the manner testified, such negligence, assuming the child to be non sui juris, would bar recovery; yet the jury were instructed that a recovery could be had upon proof merely that there was negligence on the part of the defendant. The last request, particularly, was, in view of the facts, erroneous and most prejudicial.

The judgment and order accordingly must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.