CSATLOS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. STREET RAILWAY—PERSONAL INJURIES—OPINION OF COURT ON REVERSAL—RIGHT OF PLAINTIFF ON SECOND TRIAL.

Though the court, on appeal, in reversing a judgment for plaintiff in an action against a street railway for injuries received while attempting to cross the track, by reason of the negligence of the driver in failing to stop the car and defendant's negligence in failing to supply the car with an efficient brake, intimated that no recovery could be had for the driver's negligence, plaintiff on a new trial might introduce evidence to support both allegations, and was entitled to have both issues submitted to the jury, if sustained by sufficient evidence.

2. SAME—EVIDENCE—VERDICT—CONDUCT OF JURY.

In an action against a street railway company for injuries to a person on the track, the only evidence of a defective brake was testimony of the driver. His evidence was contradictory to that given by him on a former trial, and he admitted that he had given false evidence in several respects. The jury returned a verdict for plaintiff, and did not answer the question whether the brake was defective, and, on being interrogated by the judge, stated that they did not answer it because the jurors had decided to throw out the driver's evidence. They were instructed, if they did so, to answer the question in favor of defendant. They retired, and returned with an affirmative answer to such question. Held, that the verdict should be set aside, as the result either of prejudice or misapprehension.

Appeal from trial term, New York county.

Action by William Csatlos, an infant, against the Metropolitan Street Railway Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
Clifford Seasongood, for respondent.

O'BRIEN, J. This action is to recover for damages sustained by the plaintiff, who was run over by one of defendant's horse cars,

and, as a result, lost his leg, while attempting to cross, with his
mother and others, from the southwest to the northeast corner of
Twenty-Third street and Second avenue. The leading facts were
stated in the opinion upon the previous appeal (70 App. Div. 606,
75 N. Y. Supp. 583), when a judgment for $10,000 was reversed on
the ground of error in the charge to the jury. Therein it was inti-
mated that no recovery could be had for negligence of defendant's
driver in failing to stop the car, but that the negligence must be
predicated upon the failure of the defendant to supply an efficient
brake, by reason of which it was impossible for the driver, after he
saw the plaintiff, to stop the car in time. As appears from the open-
ing on the new trial, the plaintiff proposed to recover upon that
ground (i. e., a defective brake), but left the way open for recovery
upon the ground of negligent operation of the car. The defendant
during the new trial confined its attention to the question of the
brake, and did not call some of its old witnesses as to the manner
in which the accident happened, although they were in the court-
room. And the defendant was of the opinion that the question of
the general negligence in operating the car should not be submitted
to the jury, in view of what this court had said upon the formal ap-
peal, and excepted to such submission. This attitude, however, can-
not be supported, because upon the reversal, and the ordering of a
new trial, the plaintiff was free to go into every question presented
by the pleadings, and have such as were supported by evidence sub-
mitted to the jury.

An examination of the record discloses that the testimony now
presented upon the subject of the operation of the car by the driver
is not precisely the same as it was on the prior appeal. Then the
driver testified that he first saw the plaintiff as he stood in the middle
of the track, five feet ahead, and he at once put on the brake and
separated his horses, and tried by shouting to avert the accident.
On this trial he testified that he first saw the plaintiff and those who
accompanied him while they were on the east-bound track, going
across the street, with the evident purpose of crossing in front of
him, and when he had his horses' heads just over the north-bound
Second avenue track. He says:

"They were crossing over for Second avenue when I was on the north-
bound Second avenue track, but they had not been on the west-bound track
yet. They were about the last rail of the east-bound track; Twenty-Third
street track; the north end of it,—north end. At that time I should judge
that the party was about ten or twelve feet in front of me when I saw them
there."

He also says in answer to the question: "Did you realize at that
time that these people were seeking to cross at that point?" "Yes.
That was a transfer point. * * * When I saw these people on
the track in front of me, I put on the brakes. I had five feet in which
to stop my car from the nearest woman to me."

He was then asked, "You approached the westerly side of Sec-
ond avenue at the transfer point, and the point where, by the rules
of the company, your car was required to stop?" and answered,

"Yes, sir." Thereafter he testified that, at the rate he was going, he could stop, had the brake been all right, within five feet.

On the part of the other witnesses, also, there is a tendency to vary from that previously given. Thus Mrs. Csatlos says now that they started to go diagonally, but did not go diagonally, and that they wanted to go on the cross-walk, and she was on the cross-walk when she saw the car, and Miss Mick and the boy were near by, and they crossed straight, and on the cross-walk. And Mr. Harrison says that when he first saw the boy he was on the cross-walk, and he was standing three feet from the cross-walk when the horses' heads were three feet away; "when I first saw the horses hit him, he was right on the walk"; that the driver was turning the brake, and the horses were at a trot, and the front dashboard was a little over the walk when the car stopped. At the last trial he said the dashboard was within four feet of the crossing. And in fixing the mark again on the plan, he put the place nearer the cross-walk.

The inferences to be drawn from this testimony are quite different from those that could be drawn on the former record. If they credited this evidence, although inconsistent with what appeared upon the former trial, the jury were at liberty to conclude that the plaintiff had dismounted from a car at a regular transfer place; that the car was seen by this driver; that he knew it was a transfer place, and saw the people, with their bundles and incumbrances, headed across the track in front of him, when he was on the north-bound Second avenue track; that these people walked over or near the cross-walk, but the car continued after the driver saw them going on the track, and the brake was not applied till the horses' heads were three feet from the boy, although the driver should have had his car under control as he was approaching a place used by transferred passengers, and where he himself, under the rules, was obliged to stop. Upon the subject of the defective brake, we have, as before, the driver's statement that the brake was worn through in two places, and had been for some time, and he had reported it to the starter, but not otherwise, and made no mention of it in his report of the accident, and that when he applied the brake it would not act, and, whereas he could ordinarily stop in 5 feet, he did not stop in 21 feet. This testimony, if credited, would tend to explain the testimony of Harrison, to the effect that the driver applied his brake when the boy was ahead of the horses, and pulled the horses in, but the car did not stop till the boy was run over. Opposed to this, we have the testimony of the conductor, who did not know of such defect; of the gearman, who had inspected the car some 10 days previously, and found no defect; by another driver, who says that he used the same car on that day, and observed nothing the matter with the brake, although he admits he had no occasion to stop suddenly. There was evidence, also, that no complaint was made to the starter, and no record of any such defect found.

Were this all that appeared upon these two subjects of the driver's negligent operation of the car and the defective brake, we should be

inclined to think that they were questions for the jury. The testimony
of the driver, however, was rendered highly incredible and discredit-
able because it was shown that he had deliberately made false state-
ments. One of these was that he is now employed by a Mr. Steinbeck,
for he subsequently testified:

"I just gave that name. * * * Excuse me for saying it, but it would
bring my party in the case. I won't tell. I wouldn't care to. I gave the
wrong name to my counsel. I told a lie about that yesterday. * * * I
did not realize I was under oath. I will give it if you wish, your honor; Mr.
Meyers."

Again, he said that in handing his report to the company he omitted
to speak of the defective brake because he intended to conceal it from
the company, and did not intend to tell the whole truth about it,
whereas on the previous trial it was shown that he said he did not have
any intention to conceal it in his report. And when asked why he
said that on the last trial he answered, "Because I wanted to hold my
position." Then he had to admit he was not employed by the com-
pany on the last trial, and it was two years after he left its employ
that he went to the plaintiff's attorney and told of the brake.

At the close of the evidence the court submitted to the jury three
questions:

· "(1) If the defendant was negligent, was the negligence the negligence of
the driver in operating the car? (2) If the defendant was negligent, did the
negligence consist in furnishing the driver with a car the brake of which was
defective? (3) Was the brake a defective one?"

The jury retired, and thereafter returned and handed in a paper, the
foreman saying, "We have found for the plaintiff." The court read
the paper, and said: .

"It is impossible to make anything out of the answers to these questions,
· and you will have to entirely reconsider them. Do counsel desire to see these
answers to the questions?"

Plaintiff's counsel said he did not, and suggested that the court in-
struct the jury, if there was any ambiguity. The judge then said that
the answer to the first question was consistent with the verdict ren-
dered, and that the second question was "answered in a manner that
has a tendency upon the part at least of some of the jurors to negative
the first proposition to which they agree; and the same is true of the
third question." He then asked, "Do you wish any instruction?" A
juror thereupon answered, "The reason the second and third proposi-
tions were not answered was because some of the jury decided to
throw out, practically, the evidence of the driver, Knapp." The court
remarked that it did not care to hear about the deliberations, but that
the verdict was consistent with the theory of the case that was
charged, only the answers to those questions ought to be agreed
upon one way or the other by all the jurors, and for that purpose
the second and third questions would be sent back. The defend-
ant's counsel then requested the court to charge that, if the jury
threw out the testimony of Knapp, it is their duty to answer those
two questions for the defendant; and the judge said he would charge
to that extent, adding, "because I realize the theory upon which

you reached the verdict." Thereafter the jury retired, and returned with an affirmative answer to each question, and stated that their verdict for plaintiff was $15,000.

It is evident from what thus took place that there was a mistrial. The jury did not believe the driver, and, as his was the only testimony to support the theory of a defective brake, it was, under the instruction of the court, their duty to have answered the second and third questions submitted to them in the negative. Instead, however, they finally answered them in the affirmative; and we are thus left in doubt as to whether defendant's liability was predicated on the ground of negligent operation of the car, or on the ground of a defective brake. On the latter ground, the verdict was clearly against the weight of evidence; for, as we have pointed out, against the driver's testimony, which alone supported that theory, and which the jury did not believe, we have witnesses whose testimony tended to show that the brake on this car the day of the accident was not defective. Considering the course the trial took, the refusal of the jury to follow the instruction of the court, and the very large verdict, it is evident that either prejudice or misapprehension of the issues or the instruction of the court had a part in bringing about the verdict. It follows, therefore, that, in the interests of justice, the judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and HATCH and McLAUGHLIN, JJ., concur. INGRAHAM, J., concurs in result.