Bernard S. Meyer, J.
These motions raise questions concerning (1) the effect of special jury findings, made pursuant to direction given under subdivision 5 of section 193-a of the Civil Practice Act, on cross claims being tried before the court without a jury and (2) the construction of the last sentence of section 459 of the Civil Practice Act, which provides that: ‘1 Where a special finding is inconsistent with a general verdict, the former controls the latter, and the court must render judgment accordingly.” The consolidated actions here involved seek damages for wrongful death, damages for personal injuries, and property damage. Defendants in the personal injury and property damage actions are the Colorado Fuel & Iron Co., manufacturer of a flanged and dished head, and Welded Tank & Construction Co., Inc., manufacturer of a water storage tank in which the head was used as a component part, the action having been discontinued as to the other defendants. Explosion of the head *1002 during installation of the tank caused the damage complained of. In the wrongful death action, Welded is the only remaining defendant, but has brought Colorado in on a third-party complaint. In the personal injury and property damage cases, the jury returned a general verdict against both defendants, and in the wrongful death action, against Welded. The jury also answered an interrogatory that its verdict in the property damage action against Welded was based on both negligence and breach of warranty, and answered five additional interrogatories submitted to them concerning all three actions as follows: “ 3. Was the head that failed defective? ”— “ Yes.”
“ 4. Was the defect due to negligence in the manufacture of the head? ” — “ No.”
“ 5. Was there negligence on the part of Colorado in testing or inspecting the head? ” — ■“ No.”
“ 6. Was there negligence on the part of Welded during or prior to the manufacture and delivery to the Eastwood Village site of the tank of which the head that failed formed a part? ”— “ Yes.”
“ 7. Was there negligence on the part of Welded in testing or inspecting the head? ”— “ Yes.”
Motions made by plaintiffs and by defendant Welded for resubmission to the jury because of the inconsistency of the answers to questions 4 and 5 with the general verdict against Colorado were denied in view of the mandatory language of section 459 of the Civil Practice Act quoted above. Colorado then moved that the Clerk be directed to enter judgment in its favor in the personal injury and property damage actions, and that the cross claim against it in the property damage action and the third-party complaints against it in the other two actions be dismissed. All plaintiffs and defendant Welded oppose those motions, and the property damage plaintiff and defendant Welded also move for a new trial.
If only the special findings are considered, Colorado’s motion for judgment on the cross claims must be granted. Taken together, as they must be the special findings establish active negligence on Welded’s part preventing recovery based on common-law indemnification. They also prevent recovery by Welded based on breach of an implied warranty of merchantable quality, for they establish Welded’s own negligence as a supervening cause of the damage done and thus that that damage did not flow from the breach of warranty, if breach there was. While they do not entirely exclude the possibility of such a breach, it being conceivable that the defect in the head occurred without negligence while the head was in Colorado’s possession, *1003 the court finds that possibility inconsistent with the implication, arising from the answers to questions 6 and 7, that the defect in the head occurred while the head was in Welded’s possession. The testimony of defendant’s engineering expert sustains the conclusion that the defect occurred after the hydrostatic test of the tank by Welded; the testimony of plaintiff’s metallurgist accepts the possibility that the defect could have occurred after the head came into Welded’s possession. The court, therefore, finds that there was in fact no defect in the head when delivered by Colorado to Welded and, consequently, no breach of warranty. Based on the same analysis of the testimony of the two experts, the court rejects the argument that the jury’s answers to questions 4 and 5 are against the weight of the evidence. Obviously, the jury accepted the opinion of defendant’s engineer and not that of plaintiff’s metallurgist.
It is strenuously argued, however, that the court may not consider the special findings, that they are advisory only and cannot be given binding effect on the cross claims since the jury were told that the cross claims being tried before the court had ‘ ‘ no bearing on your determination of the issues ’ ’ before them and were not instructed concerning active and passive negligence. Subdivision 5 of section 193-a of. the Civil Practice Act, which was enacted by chapter 971 of the Laws of 1946, reads as follows: “5. When a verdict in plaintiff’s favor against the third-party plaintiff might be rendered upon a ground which would not support the claim asserted by the third-party' plaintiff against the third-party defendant, the court, on motion of the third-party plaintiff or the third-party defendant, shall instruct the jury to make, in addition to a general verdict, appropriate special findings with respect to the ground of the third-party plaintiff’s liability.” As the Judicial Council’s Report makes clear, the subdivision is couched in mandatory language in order to assure consistency of result on the original claims with that on the claim over. The pertinent portion of the report (Twelfth Annual Report of N. Y. Judicial Council, 1946, p. 208) states: “In refusing impleader in the Nichols case [Nichols v. Clark, MacMullen & Riley, Inc., 261 N. Y. 118], the court pointed out that, if impleader were permitted and the jury returned a verdict for the plaintiff, there would be no way of telling from such verdict whether it was based upon a ground which would entitle the defendants to reimbursement from the third party. In other words, it might happen, in a case of this type, that a verdict rendered in defendant’s favor on the third-party claim is, in fact, inconsistent with the theory on which the jury based the verdict *1004 against the defendant in the main action. In order to overcome this objection and to give the interested parties a means of controlling the consistency of the verdicts rendered by the jury, proposed subdivision 5 of new section 193-a provides that the defendant or the third party may demand that the jury be instructed to make appropriate special findings in regard to the ground upon which the jury found the defendant liable.” That the present claims over are by stipulation being tried by. the court rather than the jury does not alter the result. Consistency is as desirable in such a case as when both original and third-party claims are before the jury. The effect of the subdivision in a case such as the present is to make the jury’s findings, unless set aside by the court as contrary to the weight of the evidence, determinative of so much of the cross claims as the findings cover, leaving it to the court to supply such interstitial findings on the cross claims as are necessary. Nor does it avail the property damage plaintiff that what is involved in that action is a cross complaint under section 264 of the Civil Practice Act rather than a third-party complaint under section 193-a. “ Both sections are obviously intended to accomplish the same purpose under different circumstances, the purpose being to avoid multiplicity of litigation and to determine the ultimate rights of all parties in one trial.” (Galka v. City of Albany, 285 App. Div. 27, 29; accord: Seltzer v. Rosenberg, 199 Misc. 4. affd. 277 App. Div. 1138.)
The conclusion thus reached is strongly supported by Swarzina v. Knight & Timoney, Inc. (265 App. Div. 33), a decision rendered prior to the addition of subdivision 5 to section 193-a of the Civil Practice Act. That case involved the trial before a jury of the claim of a subcontractor’s employee against the general contractor, and the trial before the court of the general contractor’s claim over against the subcontractor. Notwithstanding an instruction that plaintiff could not recover if he were standing upon a ladder at the time of his injury, the jury brought in a verdict for the plaintiff and answered affirmatively an interrogatory concerning whether plaintiff was on the ladder at the time of injury. Mr. Justice Cohala$t ignored the special finding and directed the entry of judgment for the plaintiff on the general verdict and for the defendant on the cross claim (N. Y. L. J., Feb. 18, 1941, p. 753, col. 1), basing his decision on the understanding of counsel that plaintiffs’s rights would remain unaffected by the jury’s answers to the inquiries and that those answers were merely to be of aid to the court in determining the cross claim. The record in that case shows (Respondent’s Brief, pp. 31, 38) that the jury had been told in a number of *1005 different ways that the special finding was only for the aid of the court on the cross claim. Nonetheless, the Appellate Division, First Department, reversed and granted a new trial.
That, in the instant case, the jury was not aware what the legal result of its fact finding would be is no reason for refusing its findings binding effect on the claim over, as mandated by subdivision 5 (supra). Indeed, an instruction advising the jury the effect of a stated answer on the ultimate result would be erroneous (Wicker, Special Interrogatories to Juries in Civil Cases, 35 Yale L. J. 296, 303; see Clementson, Special Verdicts and Findings By Juries, p. 93). Further, it should be noted that the court did not advise the jury that its determination of the issues would have no bearing on the cross claims, but the converse.
Schwartz v. Merola Bros. Constr. Corp. (290 N. Y. 145, 155-156), the authority cited for the proposition that the court erred in not charging concerning active- and passive negligence, is clearly distinguishable. In that case the jury found “ all defendants equally guilty of negligence,” a finding that could have no meaning unless the jury had been instructed how to determine degrees of culpability. In the instant case the jury’s finding is that Colorado was guilty of no negligence; had it been otherwise the court would, under the stipulation for trial of that issue before it, have made the determination as to active and passive negligence.
But, it is argued, even if the special findings may be considered on the cross claim and claims over, section 459 of the Civil Practice Act furnishes no basis for entry of judgment for Colorado in the property damage and personal injury actions. Rather it is said, the court should, under the rule of cases such as Warner v. New York Cent. R. R. Co. (52 N. Y. 437) have sent
the jury back to reconsider, and having failed to do that must now grant a new trial. The last sentence of section 459 of the Civil Practice Act, quoted above, has been a part of New York procedural law since 1848, first as section 217 of the Code of Procedure [L. 1848, ch. 379], then as section 262 of the 1849 Code [L. 1849, ch. 438], then as section 1188 of the Code of Civil Procedure and finally as a part of section 459 of the Civil Practice Act. (See Bergman v. Scottish Union & Nat. Ins. Co., 264 N. Y. 205, 214.) It Avas copied from New York’s Code of Procedure by a number of other States (Wicker, op. cit., 35 Yale L. J. 296, 303, supra). As found in rule 49 of the Federal Rules of Civil Procedure and in the Proposed Rules of Civil Practice (§ 41.11, subd. [c]; [N. Y. Legis. Doc., 1958, No. 13, pp. 234-235]) the rule authorizes the court to enter judgment or resubmit *1006 the matter to the jury or grant a new trial. In its present form, however, the final sentence of section 459 of the Civil Practice Act is mandatory and refers only to entry of judgment. That the word 1 ‘ must ’ ’ is not to be read ‘1 may ’ ’ is indicated by a dictum of the Court of Appeals in Pangburn v. Buick Motor Co. (211 N. Y. 228). In considering a jury verdict holding defendant employer but exonerating defendant employee in a negligence case, the court recognized the controlling effect of the statute in the following statement (p. 234): “ in determining whether the judgment [against the employer] is supported and authorized we think that the appellant is entitled to have applied the principles which give to an appellant the benefit of the most advantageous of the inconsistent findings (Whalen v. Stuart, 194 N. Y. 495), or which make the special findings superior in effect to the general verdict (Code, § 1188), and thus to have the award of damages against it controlled by and yield to the verdict and findings that the facts did not exist which justified such an award of damages.” (Emphasis supplied.)
Additional authority that special findings require entry of judgment notwithstanding an inconsistent verdict is to be found in United States Trust Co. v. Harris (2 Bosw. 75, 89); Dempsey v. Mayor of City of New York (10 Daly 417), and Paret v. New York El. R. R. Co. (28 Jones & Sp. 441); see, also, Fraschieris v. Henriques (6 Abb. Prac. [N. S.] 251, 263); Moss v. Priest (19 Abb. Prac. 314, 317), and United States v. Pinover (3 F. 305). The argument that resubmission was the proper course is based on Kennedy v. Ball & Wood Co. (91 Hun 197). However, the court in that case specifically held (p. 200) that “ The case was not one which required any special findings from the jury.” Under the then wording of section 1187 of the Code of Civil Procedure that conclusion was correct (Sherman v. Leicht, 238 App. Div. 271, 275) and it followed, as the court further held (91 Hun 201) that section 1188 of the Code of Civil Procedure “ was never intended to apply to such a case as this.” Clearly, therefore, the case is not precedent for the instant situation. The wisdom of resubmitting the matter to the jury may be questioned in view of the more specific nature of the special finding, the fact that one of the purposes of special findings is to prevent the entry of a general verdict based on passion or prejudice, and the probability that, upon resubmission, the jury will conform the special finding to the general verdict (e.g., Csatlos v. Metropolitan St. Ry. Co., 78 App. Div. 635), rather than vice versa. Be that as it may, absent a statutory direction for resubmission and present the mandatory language *1007 of section 459 of the Civil Practice Act, the matter could not be resubmitted.
Csatlos (supra); Swarzina v. Knight & Timoney, Inc. (supra), and Camp v. Pennsylvania R. R. Co. (201 App. Div. 78, 87) all involved findings inconsistent with the general verdict and in each a new trial was granted. None supports the argument
for a new trial in the instant case, however, for none made reference to the statutory provision now under discussion and each is clearly distinguishable. Csatlos may be distinguished because the new trial was granted after resubmission and the jury’s failure to follow the added instructions given; Swarzina, because an additional ground (newly discovered evidence) for new trial existed; Camp, because the Trial Judge, upon the jury’s return to the courtroom for further instruction orally restated the written question in such fashion that it became impossible to ascertain whether the jury was answering the written or the oral inquiry (see 201 App. Div. 85). It has been held that if the special findings are inconsistent with the general verdict but not destructive of plaintiff’s right of recovery, the court should order a new trial (Anderson v. Pierce, 62 Kan. 756; Citizen’s Nat. Bank v. Larrabee, 64 Kan. 158; see Stevens v. City of Logansport, 76 Ind. 498, 501). No New York case has ever so held, but were the rule applicable in New York, the parties moving for new trial would not be helped by it, for as is hereafter demonstrated, the special findings are destructive of plaintiffs’ rights to recover from Colorado under the circumstances of the present case. The argument against the granting of a new trial in such a situation was forcefully stated by the United States Supreme Court in Walker v. Southern Pacific R. R. (165 U. S. 593). In holding that the provision for entry of judgment on the special findings notwithstanding the general verdict contravened neither the right to trial by jury nor any other Federal constitutional provision, the court said (p. 598): ‘1 When a general verdict is returned and the court determines that the jury have either misinterpreted or misapplied the law the only remedy is the award of a new trial, because the constitutional provision forbids it to find the facts. But when the facts are found and it is obvious from the inconsistency between the facts as found and the general verdict that, in the latter, the jury have misinterpreted or misapplied the law, what constitutional mandate requires that all should be set aside and a new inquiry made of another jury? Of what significance is a question as to a specific fact? Of what avail are special interrogatories and special findings thereon if all that is to result therefrom is a new *1008 trial, which the court might grant if it were of opinion that the general verdict contained a wrong interpretation or application of the rules of law? Indeed, the very thought and value of special interrogatories is to avoid the necessity of setting aside a verdict and a new trial — to end the controversy so far as the trial court is concerned upon that single response from the jury.”
Nonetheless, it is argued, judgment may not be entered on the special findings for Colorado because the findings and general verdict are not irreconcilable. Notwithstanding the length of time the provision under discussion has been a part of New York procedural law, and the number of cases above referred to in which it has been cited or construed, there is little New York law defining the method by which inconsistency is to be determined. Only United States Trust Co. v. Harris (2 Bosw. 75, supra) touches the question, holding that “ it would be improper for the Court to look into the evidence, to be influenced by its own conclusions of fact, as it would form them upon the evidence. It can only look at the facts established by the general verdict, and those found in answer to the * * * questions submitted.” (2 Bosw. 87; see, also, Clementson, op. cit., p. 136; 89 C. J. S., Trial, § 564, p. 331.) Nonetheless, the findings are to be interpreted in the light of the testimony and the charge, since only in that way can the full intent and meaning of the jury’s answers be ascertained. (Missouri Pac. Ry. Co. v. Holley, 30 Kan. 465; Greiner v. Greiner, 129 Kan. 435; Schroeder v. Nelson, 157 Kan. 320; see Larkin v. Upton, 144 U. S. 19.) The findings are to be construed as a whole (Clementson, op. cit., p. 132). Further, “Every reasonable intendment should, however, be indulged in favor of the general verdict in an effort to harmonize it with the answers to the interrogatories, and the latter should be held controlling only ‘ where the conflict on a material question is beyond reconciliation on any reasonable theory consistent with the evidence and its fair inferences. ’ ” (5 Moore’s Federal Practice, § 49.04, p. 2211, quoting from Theurer v. Holland Furnace Co., 124 F. 2d 494, 498; see Clementson, op. cit., pp. 131-148; 89 C. J. S., Trial, § 564, p. 330.)
Applying the foregoing rules, the court concludes that the findings that Colorado was not negligent in the manufacture, testing or inspection of the head cannot be reconciled with the general verdict “ on any reasonable theory consistent with the evidence and its fair inferences.” The argument to the contrary is that the testimony shows that Colorado performed seven steps on the head that exploded (manufacture of the steel; *1009 rolling of the ingot into plate; shaping the head from the plate; testing the steel; inspecting the head; storing the head; and shipping the head to Welded) and that the special findings negative negligence only in shaping and inspecting the head. The argument fails because it depends upon distortion of the words used in the interrogatories put to the jury and because it overlooks the limitations on the jury’s findings resulting from the charge and from the case made by plaintiffs. Question 4 inquired whether ‘ ‘ the defect was due to negligence in the manufacture of the head.” To limit the finding thus made to absolution only as to the shaping of the head from the plate, and exclude from it the manufacture of the steel, rolling of the plate and testing of the steel is to ignore the fact that all four processes are but steps in the manufacture of the head. Question 5 concerned “ negligence on the part of Colorado in testing or inspecting the head.” The evidence was that though the steel was tested, the head was inspected but not tested. The jury’s finding on question 5 negatives negligence in omission of testing and commission of inspection of the head. The findings on questions 4 and 5, thus, exclude negligence on Colorado’s part on the first five of the seven steps outlined above. The charge, unexcepted to in that respect, informed the jury that Colorado could be held only if it found ‘1 that a defect in the head existed when the head was delivered to Welded by Colorado and that the defect could have been discovered by reasonable inspections and tests made by Colorado. ’ ’ The latter requirement is inconsistent with the theory of negligence in storage or delivery, and, parenthetically, is negatived by the specific finding in answer to question 5. No charge was given concerning storage or delivery nor interrogatory put with respect to either, because the case was not tried on any such theory nor was there any evidence in the case from which negligence of Colorado in either storage or delivery could be inferred. True there was evidence that the defect in the head occurred because the head had been ‘ ‘ cold-worked ’ ’ and that any heavy blow to the metal would constitute such cold-work. Plaintiffs’ evidence, however, was concerned with the manufacture and testing of the tank by Welded, and the process by which a head of the type in question is manufactured and tested, and was devoid of any proof concerning methods of storage and delivery of such heads by the manufacturer. While plaintiffs were not required to prove a specific act of negligence by Colorado and could rely on a demonstration that ‘ ‘ the probability that the defect which caused the accident was attributable to negligence of the defendant * * * out *1010 weighed any possibility that the defect was due to any other cause ” (Markel v. Spencer, 5 A D 2d 400, 407, affd. 5 N Y 2d 958), plaintiffs’ evidence showed no such probability with respect to storage or delivery. Plaintiffs urge that the jury was free to infer negligence during those steps because Colorado offered no proof as to its due care in the performance of them. That argument misconceives the holding of Markel v. Spencer (supra). In that case the manufacturer of the finished product offered no evidence. Starting from the premise that the defect there involved must have occurred by some act or omission in the process of manufacture or inspection, which processes were in the exclusive control of the manufacturer, the court reasoned that the jury could find that the act or omission was that of the manufacturer and further could find that the act was negligent because the defect would not have occurred had the required degree of care been exercised. Here Colorado met the case against it with respect to manufacture and inspection by offering an explanation of those processes. It was not obligated to go beyond plaintiffs’ case and exclude possibilities which plaintiffs had not brought within the realm of probability. There is here no showing that storage or delivery were in Colorado’s exclusive control, no basis for inferring that the head was cold-worlced or sustained any blow during storage or delivery, no foundation for a finding that the defect in the head would not have occurred had Colorado exercised requisite care in those processes. To the contrary, there is here the jury’s finding of intervening negligence on the part of Welded, in the light of which, negligence on Colorado’s part could not properly be inferred (see Markel v. Spencer, supra, p. 403, which predicated decision on the holding that the 1 ‘ evidence sufficiently excluded ’ ’ intervening causes). Even if the last factor be ignored, however, the theory that the general verdict was based on a finding of negligence on Colorado’s part in either storage or delivery is neither reasonable nor consistent with the evidence and its fair inference. Unless reconciliation is to be measured by what might have been proven rather than the case as actually presented by plaintiffs, the verdict and findings in this case are irreconcilable.
The court has not overlooked Welded’s contention, based on Socony Burner Corp. v. Gold (227 App. Div. 369), that the first interrogatory submitted to the jury the question of law whether there was a breach of warranty. Since the warranty therein referred to was Welded’s warranty to Lauman, the point is irrelevant with respect to Colorado’s obligation to Welded. Further, the point is not well taken, for while the interrogatories used the words “ breach of warranty ” and “ negligence ”, they *1011 did not thereby submit questions of law to the jury. Each such term was defined in the charge, and as to each the jury was instructed what the factual prerequisites to a finding were.
It follows that the motions for new trial are denied and Colorado’s motions granted. All motions made during trial on which decision was reserved and on which express rulings are not made herein are denied. The Clerk is directed to enter judgment on the general verdict against Welded in the personal injury and death actions, to enter judgment against Welded in the property damage action in the amount of $4,052.77, the property damage plaintiff, Lauman, having stipulated in open court on the argument of the motion to reduction of the verdict to that sum, to enter judgment for Colorado on the special findings in the personal injury and property damage cases, and to enter judgment dismissing the cross claim and two third-party claims on the merits. Proceed accordingly.